[No. C063434. Third Dist. July 28, 2011.]

JOSE SALAS, Individually and as Administrator, etc., et al., Plaintiffs and Appellants, v.
DEPARTMENT OF TRANSPORTATION, Defendant and Respondent.

**COUNSEL**

Miller Law, Inc., John C. Miller, Jr.; Cable Gallagher Law Firm and Mark T. Gallagher for Plaintiffs and Appellants.

Ronald W. Beals, Thomas C. Fellenz, Jeanne Scherer, Douglas L. Johnson and Jeffrey V. Lovell for Defendant and Respondent.

OPINION

**DUARTE, J.**—A vehicle traveling on State Route 12 (SR 12), a state highway, collided with a pedestrian, Paula Salas.[1] Paula sustained serious injuries and ultimately died. Subsequently, the administrator of Paula's estate, Jose Salas, her husband Alberto, and her two sons (collectively plaintiffs) filed a civil complaint against the State of California, Department of Transportation (Caltrans). The complaint asserted three causes of action: (1) wrongful death based on a "dangerous condition" of public property pursuant to Government Code[2] section 835; (2) loss of consortium; and (3) a survivor's action. Caltrans moved for summary judgment or, in the alternative, summary adjudication, contending that a dangerous condition of public property did not exist at the accident location. The trial court agreed and granted summary judgment. Plaintiffs appealed.

We affirm. We find Caltrans carried its burden to establish a prima facie case of no dangerous condition. Most of plaintiffs' evidence offered in opposition was excluded by the trial court. We find either that the court's rulings were correct or that plaintiffs forfeited their challenge to the evidentiary rulings by failing to properly present such challenges with specificity as to each objection and reasoned argument and authority as to why the court's evidentiary rulings were an abuse of discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

### I

#### *The Accident*

The accident occurred at the intersection of SR 12 and Bruella Road in the town of Victor. SR 12 runs east and west and Bruella Road runs north and south. At that intersection, there is a white-lined crosswalk offset a few feet to the east of Bruella Road. The crosswalk runs north and south across SR 12. The posted speed limit in the area is 45 miles per hour and the terrain is flat.

At approximately 7:00 a.m. on October 21, 2006, Paula and Alberto attempted to cross SR 12 from north to south utilizing the lined crosswalk at the Bruella Road intersection. Larry Bafford was driving his Chevrolet Lumina eastbound on SR 12 approaching Bruella Road. As Paula walked across SR 12 she departed slightly from the crosswalk on its east side,

---

[1] Because we refer to more than one person sharing the same last name, we refer to Paula Salas and her husband, Alberto Salas, by their respective first names.

[2] Further undesignated statutory references are to the Government Code.

apparently to examine a bag that was in the highway. Looking westward, Alberto observed Bafford's approaching vehicle in the distance with its headlights on. He continued walking and successfully crossed the highway, reaching a post on the other side. As Alberto reached the post, Bafford's vehicle struck Paula.

## II

### *The Complaint*

Plaintiffs brought suit against Caltrans for wrongful death and related causes of action. The first amended complaint alleged that a dangerous condition of public property existed at the accident location and it caused injury to and the death of Paula, creating liability for Caltrans under section 835. As alleged, the "dangerous condition of public property at the Incident Location on October 21, 2006, consisted of the following non-inclusive list: Lack of proper signage, controls or signals; failure to provide safe streets or highways; failing to design proper signage, controls or signals; failure to have traffic control devices in place; placing crosswalk in the location without property safety devices; failing to follow recommended standards as to the location of the crosswalk; failing to provide the recommended crosswalk design for the location; [and] failing to properly enforce and/or control speed in the area."

The complaint also sought damages for loss of consortium on behalf of Alberto. A survivor's action by the administrator of Paula's estate sought damages for medical and other expenses due to her injuries.

## III

### *Summary Judgment/Adjudication Motion*

Caltrans moved for summary judgment or summary adjudication, arguing that the accident location did not constitute a dangerous condition under section 835 due to its physical aspects and the lack of prior collisions involving a vehicle and a pedestrian. Caltrans produced evidence of both the physical nature of the intersection and the lack of vehicle versus pedestrian collisions at the accident location.

With respect to the location's physical aspects, Caltrans established the following undisputed facts: (i) the accident occurred at the junction of SR 12 and Bruella Road; (ii) SR 12 at the accident location "is straight and level"; (iii) there are "no sight obstructions" to a vehicle, like Bafford's, traveling

eastbound on SR 12 approaching the Bruella Road intersection; and (iv) there are "no sight obstructions" from the standpoint of a pedestrian looking westward from the crosswalk at the intersection of SR 12 and Bruella Road.

In support of these facts, Caltrans cited the traffic collision report and eight photographs of the accident location attached to the declaration of Caltrans's expert, Ron Nelson. The photographs, as further explained in Nelson's declaration, reveal that an eastbound driver on SR 12 would encounter two yellow pedestrian signs, one approximately 445 feet west of the center of Bruella Road before the intersection, and a second sign just west of the intersection of Bruella Road. An eastbound driver would also travel over one PED XING stencil starting 440 feet west before the intersection of Bruella Road. The photographs showed clear visibility and no sight obstructions at the intersection.

The witness statements in the accident report indicated the driver saw both Alberto and Paula before the accident. Bafford stated he was slowing down as he entered the town of Victor and thought that he was going around 45 miles per hour. He saw Paula and Alberto in the middle of the roadway. Alberto appeared to be bending over to pick up something in the roadway and Paula was about eight feet to the east of him. Alberto then stood up straight and walked to the south, out of the traffic lanes. During this time, Bafford said something out loud about Paula and Alberto out in the traffic lane.

Patricia Lewman was Bafford's passenger. She said Bafford was driving at a normal speed. She was unsure how fast he was actually going, but he was not exceeding the speed limit. Bafford said something about a pedestrian in the roadway. She looked ahead of them and saw Paula in the middle of the left turn lane bending over at the hips; it appeared that she was trying to pick up something. As they approached, Paula stood up straight and appeared to start to walk to the south, into the car's path. Bafford swerved to the left, but Paula then stopped and changed direction. Bafford swerved back to the right and Paula turned back to the right and ran into the path of Bafford. During this entire sequence, Bafford was applying his brakes.

Alberto stated Paula crossed the highway outside the crosswalk. After he crossed, Paula was in the left turn lane. She looked to the west where Bafford was approaching. Paula appeared to be confused. She turned as if to return north, but then walked south and was struck by Bafford. Caltrans also provided portions of Alberto's deposition, in which he testified it was light out and one could see well. He and Paula used the crosswalk every day. Alberto claimed Bafford was speeding. He explained that once he crossed the highway, he heard the screeching tires, and by the time he turned around, Bafford's car was already colliding with Paula.

The police report concluded Bafford was the cause of the accident as he failed to yield to a pedestrian and was driving at an unsafe speed for the conditions. The report also found Paula was a factor in the accident as she was not in the crosswalk and changed her direction at the last moment. A supplemental report recommended referring the matter to the district attorney's office for possible prosecution of Bafford for vehicular manslaughter without gross negligence.

As to the frequency of vehicle versus pedestrian collisions, Caltrans asserted that from January 1, 1997, through July 31, 2007, approximately 31,552,800 vehicles passed through the accident location. Caltrans further asserted that "[f]rom January 1, 199[7], through July 31, 2007, the subject pedestrian–motor vehicle incident was [the] only such incident involving a pedestrian and motor vehicle to occur at or around t[h]e subject location."

In support of this asserted fact, Caltrans cited to Nelson's declaration and attachments thereto. Nelson, a former Caltrans employee, explained in his declaration that Caltrans maintained a statistical computer database system called the Traffic Accident Surveillance and Analysis System (TASAS) that tracked the location, frequency, and type of accidents on state highways. The data was generated from traffic collision reports obtained from the California Highway Patrol (CHP) and was retained for 10 years plus the current year. Attached to Nelson's declaration was a copy of a TSAR report (a TASAS Selective Accident Retrieval report) produced from the TASAS system. The report was generated to determine whether there had been any other vehicle versus pedestrian accidents at or around the accident location. According to Nelson's declaration, the report reveals that from January 1, 1997, through July 31, 2007, the "only accident involving a pedestrian and motor vehicle at and around the subject accident location, post mile 20.90, was the subject accident of this litigation."

Nelson opined that the accident location was not a dangerous condition of public property.

IV

*Plaintiffs' Opposition*

In opposition, plaintiffs argued that this "intersection is a dangerous condition because it involves a small town street passing over a busy highway, without any proper signage, controls, signals or other safety measures." Plaintiffs contended that Caltrans's evidence on the infrequency of vehicle versus pedestrian accidents was "hardly surprising" "given the very small population in the town of Victor."

To demonstrate the dangerousness of the intersection, plaintiffs proffered traffic collision reports showing that from April 2000 to February 2008 there were 23 additional accidents at and around the subject intersection; all were vehicle versus vehicle collisions. One report documents a collision at the accident location that occurred on October 18, 2006, just three days prior to the accident at issue here. Summarizing these reports, plaintiffs represented that "[i]n almost every instance, the accidents involve automobiles proceeding through the intersection at SR-12 from Bruella Road. These drivers often would not see oncoming traffic or would underestimate the speed of oncoming traffic" on SR 12.

Plaintiffs also submitted deposition testimony from Duper Tong, a traffic engineer for Caltrans. Tong testified that Caltrans had conducted an investigation at the accident location which concluded on September 11, 2007. The investigation was prompted by a Caltrans report referred to as the "Table C" report. Tong indicated the Table C report identified the accident location as having a "high-collision concentration."

Last, plaintiffs submitted a declaration from their expert, Robert Douglas, who ultimately opined that the accident location was a dangerous condition. According to Douglas's declaration and his attached curriculum vitae, he is a registered civil engineer with extensive experience in traffic safety, including work for Caltrans.

Douglas reviewed numerous documents, including the traffic collision report of this accident, the other 23 traffic collision reports, and the Table C report. His opinion that the intersection was dangerous was based on (i) the speed of traffic entering the subject intersection and the authorized speed of travel (45 miles per hour); (ii) the visibility of the white-lined crosswalk to approaching vehicles; and (iii) the posted crosswalk signage.

Douglas performed a 3D scan survey and a speed survey of the location. He found: "The 85th percentile 1000 feet from the intersection was 69 miles per hour." He opined that this result signified traffic entering SR 12 from either side did not have the "corner sight distance" intersection entering time of seven and one-half seconds as required by Caltrans. Because the crosswalk was unprotected, the approach speed of vehicles should be under 45 miles per hour. Douglas took "this number" from numerous documents of the Federal Highway Administration. Douglas opined that to "solve this 'high accident' location," traffic can be slowed "with some 'traffic calming' treatment" or an "all-way stop sign or a traffic signal" can be installed.

Douglas opined the crosswalk was difficult to see because, although it was outlined with white parallel lines, there were no bold diagonal lines within

the crosswalk. He also found the signage inadequate. The crosswalk sign at issue here, a figure of a pedestrian with parallel lines below, had been "deleted" by Caltrans, to be replaced with a sign of a pedestrian that included a "down arrow" pointing to the crosswalk.

His examination of the 24 accident reports (including the report for this accident) indicated the left turning or cross traffic from Bruella Road did not have the required time to enter the very fast traffic stream of SR 12.

## V

### Caltrans's Objections to Plaintiffs' Evidence

Caltrans raised 26 objections to Douglas's declaration. While Caltrans did not object to Douglas's qualifications, it objected to virtually every opinion he gave about the defects of the intersection and crosswalk and what Caltrans should have done to remedy the perceived defects. Each of Caltrans's objections to the Douglas declaration was made on numerous grounds, including hearsay, irrelevance, secondary evidence, lack of foundation, lack of personal knowledge, and that the opinions were improper as based on speculation and conjecture or unproved facts, or assumptions of fact contrary to evidence. Caltrans objected to the traffic collision reports as irrelevant because they lacked substantial similarity to the instant accident.

Caltrans also submitted a reply declaration from Nelson regarding the crosswalk signage. Nelson provided documents that indicated the old crosswalk signs could remain in place until January 1, 2011; thus the signage met current California standards.

## VI

### The Ruling

In a written ruling, the trial court concluded that the accident location did not constitute a dangerous condition.[3] The trial court sustained the vast majority of Caltrans's objections and declined to consider the reports and most of the expert declaration. The trial court overruled only two objections: Douglas's statement that a crosswalk has the benefit of warning a driver of

---

[3] It appears from the pleadings that the "loss of consortium" claim and the "survivor's action" were analytically dependent upon the cause of action for wrongful death based on a dangerous condition of public property. Therefore, because the trial court did not find a triable issue as to whether the accident location constituted a dangerous condition, all causes of action were summarily disposed of.

potential pedestrians and the accident report of the instant accident. The trial court did not address Caltrans's other argument that, under section 818.2, it was immune from liability for any alleged failure to enforce the traffic laws in the area.

## DISCUSSION

### I

### *Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant meets his burden of showing that a cause of action has no merit if he shows that one or more of the elements of the cause of action cannot be established, or that there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

We review the trial court's grant of summary judgment de novo. (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017 [90 Cal.Rptr.3d 1, 201 P.3d 1147].) We consider all the evidence offered in connection with the motion, except that which the trial court properly excluded. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) In conducting our de novo review, we must view the evidence in a light favorable to plaintiffs, liberally construing their evidentiary submission while strictly scrutinizing defendant's showing, and resolving any evidentiary doubts or ambiguities in plaintiffs' favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

In reviewing the grant of summary judgment, we employ the same three-step analysis as the trial court. " ' "First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." ' [Citation.]" (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 229 [35 Cal.Rptr.3d 837].)

## II

### *Plaintiffs' Claim on Appeal*

Plaintiffs contend the trial court erred in granting summary judgment because they presented uncontradicted evidence that the intersection of SR 12 and Bruella Road "constitutes a dangerous condition of public property."

Plaintiffs rely heavily on this court's opinion in *Lane v. City of Sacramento* (2010) 183 Cal.App.4th 1337 [107 Cal.Rptr.3d 730] (*Lane*). In *Lane*, the plaintiffs sued the city for damages due to a collision with a concrete street divider. The city sought summary judgment based on evidence that no prior claims had been filed against the city for a collision with the same street divider. (*Lane, supra*, 183 Cal.App.4th at p. 1340.) This court held the absence of similar claims did not establish that the condition of public property was not dangerous: the absence of claims was not the same as the absence of accidents, and even an absence of accidents would not be dispositive on the issue of dangerousness. (*Lane, supra*, at pp. 1345–1347.) The court further held that proof that the property was not being used with due care was insufficient to show that the plaintiffs could not establish their claim for a dangerous condition of public property. (*Id.* at p. 1347.)

Although their briefing is difficult to follow at times, plaintiffs appear to argue that the court erred (1) in accepting Caltrans's showing of no prior accidents involving pedestrians to show the intersection was not dangerous; and (2) in sustaining objections to plaintiffs' evidence of prior accidents involving only motor vehicles and the Douglas declaration, which plaintiffs offered to establish that the intersection was dangerous.

We begin our analysis with a brief review of the law on dangerous condition of public property. We consider whether Caltrans made a prima facie case of no dangerous condition and then whether plaintiffs raised a triable issue of fact, which requires determination of whether the trial court properly excluded the vast majority of plaintiffs' evidence.

## III

### *Dangerous Condition of Public Property*

Section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk

of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

The term "dangerous condition" is statutorily defined as a "condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).) As further explained in section 830.2, "[a] condition is not a dangerous condition within the meaning of this chapter if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used."[4]

█ "As to what constitutes a dangerous or defective condition no hard-and-fast rule can be laid down, but each case must depend upon its own facts." (*Fackrell v. City of San Diego* (1945) 26 Cal.2d 196, 206 [157 P.2d 625].) A dangerous condition of public property can come in several forms and may be based on an "amalgam" of factors. (*Constantinescu v. Conejo Valley Unified School Dist.* (1993) 16 Cal.App.4th 1466, 1476 [20 Cal.Rptr.2d 734].) A dangerous condition of public property may arise from its damaged or deteriorated condition, from " 'the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use.' [Citation.]" (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 149 [132 Cal. Rptr.3d 341, 65 P.3d 807].)

█ A public entity may be liable for a dangerous condition of public property even where the immediate cause of a plaintiff's injury is a third party's negligence if some physical characteristic of the property exposes its users to increased danger from third party negligence. (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1348 [75 Cal.Rptr.3d 168].) "But it is

---

[4] According to the official comments of the Law Revision Commission, while "[t]echnically . . . unnecessary," section 830.2 "is included in the chapter to emphasize that the courts are required to determine that there is evidence from which a reasonable person could conclude that a substantial, as opposed to a possible, risk is involved before they may permit the jury to find that a condition is dangerous." (Cal. Law Revision Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 830.2, p. 309.)

insufficient to show only harmful third party conduct, like the conduct of a motorist. ' "[T]hird party conduct, by itself, unrelated to the condition of the property, does not constitute a 'dangerous condition' for which a public entity may be held liable." ' [Citation.] There must be a defect in the physical condition of the property and that defect must have some causal relationship to the third party conduct that injures the plaintiff. [Citation.]" (*Ibid.*)

■ Ordinarily, the existence of a dangerous condition is a question of fact, but whether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. (*Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 810 [205 Cal.Rptr. 842, 685 P.2d 1193].) "[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects." (*Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 734 [139 Cal.Rptr. 876].)

## IV

### *Caltrans's Initial Showing*

Although plaintiffs focus almost exclusively on whether or not there were prior accidents at the intersection to show its dangerousness, Caltrans offered considerable evidence about the physical characteristics of the intersection and crosswalk. This emphasis is appropriate because a dangerous condition of public property requires "a *physical* deficiency in the property itself. [Citations.]" (*Cerna v. City of Oakland, supra,* 161 Cal.App.4th 1340, 1347, original italics.) Caltrans established, and plaintiffs did not dispute, that the intersection was located on a straight and level road with no sight obstructions for either motorists or pedestrians. This evidence established there were no "blind corners, obscured sightlines, elevation variances, or any other unusual condition that made the road unsafe when used by motorists and pedestrians exercising due care." (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 440–441 [6 Cal.Rptr.3d 316] [proper to sustain demurrer to complaint alleging dangerous condition where no such allegations].)

Caltrans established the marking and signage. The crosswalk was marked by white parallel lines. A motorist approaching from the west would see three signs notifying him of the approaching intersection and crosswalk. The first sign, almost 600 feet from the crosswalk, announced the approach of Bruella Road, the second, at 445 feet, announced a pedestrian crosswalk, and the third marked the crosswalk. Further, the pedestrian crossing was marked in large letters on the roadway about 440 feet west of Bruella Road.

■ In addition to establishing the nondangerous physical condition, Caltrans offered evidence that no other collisions involving pedestrians had occurred in a 10-year period, although over 30 million vehicles had passed through the intersection. While this evidence is not dispositive on the issue of dangerousness, it is a relevant consideration. (*Lane, supra*, 183 Cal.App.4th at p. 1346.)

■ From this evidence of a well-marked crosswalk at an intersection with clear sight lines where there was no report that a pedestrian had previously been involved in an accident, the trial court properly concluded that Caltrans made a prima facie showing that no condition of property "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (§ 830, subd. (a).)

Courts have upheld the grant of summary judgment in favor of the public entity in similar circumstances.

In *Cerna v. City of Oakland, supra*, 161 Cal.App.4th 1340 (*Cerna*), the court upheld summary judgment in a case where six pedestrians were struck in a crosswalk. Plaintiffs alleged seven features (or lacking features) made the crosswalk dangerous: "(1) the crosswalk was painted white, not yellow; (2) there was no sign painted in the approaching roadway with the words 'SLOW—SCHOOL XING'; (3) there was no traffic signal; (4) there were no crossing guards; (5) signs warning of the presence of student pedestrians were either missing or in an incorrect position; (6) the crosswalk was not painted with diagonal or longitudinal lines; and (7) there were no blinking lights in the pavement along the parallel painted lines of the crosswalk." (*Cerna, supra*, 161 Cal.App.4th at p. 1348.) After considering each of these alleged deficiencies, the court concluded they did not equate to a dangerous condition. (*Cerna, supra*, at p. 1352.)

In *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177 [83 Cal.Rptr.3d 372] (*Sun*), the city removed a painted crosswalk and installed bulb-out sidewalk extensions where International Boulevard intersected with 7th Avenue. A driver traveling on International Boulevard moved from the left lane to the right lane in order to pass a stopped vehicle and struck and killed a female pedestrian. Her survivors sued the city under section 835 claiming that the bulb-outs, the failure to re-mark the crosswalks, and the traffic pattern on International Boulevard combined to create a dangerous condition of public property. (*Sun, supra*, 166 Cal.App.4th at p. 1189.) The court concluded that the public property was not in a dangerous condition, reasoning: "[T]he only risk of harm was from a motorist who failed to exercise due care by not obeying the Vehicle Code provisions requiring him both to yield to a

pedestrian and to refrain from passing around a vehicle that had stopped for a pedestrian. The bulb-outs and the absence of painted markings did not render the intersection dangerous within the meaning of Government Code section 835." (*Sun, supra*, at p. 1190.)

V

*The Trial Court's Exclusion of Plaintiffs' Evidence*

Plaintiffs attempted to create a triable issue of fact as to a dangerous condition by producing reports of 23 collisions near the accident site and the declaration of expert Douglas, who opined that the accident location was in a dangerous condition. The trial court sustained almost all of the objections by Caltrans to this evidence. Plaintiffs contend the trial court erred in excluding this evidence.

A. *Traffic Collision Reports*

The trial court excluded the traffic collision reports on the basis of relevance, finding the accidents in the reports were not substantially similar to the accident at issue because the former did not involve pedestrians. Plaintiffs contend the trial court removed a factual question from the jury by turning the factual question of whether these other accidents showed a dangerous condition for pedestrians into a legal question.

█ It is well settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question. (*Fuller v. State of California* (1975) 51 Cal.App.3d 926, 943 [125 Cal.Rptr. 586]; *Martindale v. City of Mountain View* (1962) 208 Cal.App.2d 109, 116 [25 Cal.Rptr. 148].) The question of admissibility of other accidents is primarily one for the trial court and is confined to its sound discretion. (*Simmons v. Southern Pac. Transportation Co.* (1976) 62 Cal.App.3d 341, 365 [133 Cal.Rptr. 42].)

While there must be substantial similarity to offer other accident evidence for any purpose, a stricter degree of substantial similarity is required when other accident evidence is offered to show a dangerous condition; " 'the other accident must be connected in some way with that thing . . . .' " (*Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 237 [114 Cal.Rptr.2d 151] (*Sambrano*).)

In *Sambrano*, a two-year-old child was burned when she walked into a fire ring containing hot coals at a beach park. (*Sambrano, supra*, 94 Cal.App.4th at

p. 230.) The city moved for summary judgment on the tort suit, claiming the fire ring was not a dangerous condition of public property. In opposition, the plaintiffs offered evidence of an incident report where a child dragging a boogie board tripped and fell into a fire ring and was injured. (*Sambrano, supra,* at p. 231.) The city objected to this evidence and the appellate court agreed that the prior accident was not substantially similar. The court found that in the prior accident the child was dragging something and tripped; further, the fire ring was smaller and smoldering. (*Id.* at p. 238.)

Here, the evidence of vehicle accidents offered by plaintiffs was far less similar to the accident at issue than was the evidence of an earlier fall into a fire ring found inadmissible in *Sambrano*. Here, none of the proffered accidents even involved a pedestrian, much less a pedestrian who stopped while crossing the street and then changed direction. Under the reasoning of *Sambrano*, the trial court did not abuse its discretion in ruling the traffic collision reports were inadmissible because they were not substantially similar.

### B.  *Douglas Declaration*

In opposing summary judgment, plaintiffs relied heavily on the declaration of Douglas, particularly his opinions as to the danger caused by the speed at which vehicles crossed the intersection and the need for reduced speed and traffic calming measures. Douglas also opined about the inadequacy of the crosswalk markings and signage. Caltrans raised multiple objections to virtually all of the substantive portions of Douglas's declaration and the trial court sustained all except the objection to the innocuous statement that crosswalks warn drivers of potential pedestrians.[5]

Plaintiffs contend the trial court erred in sustaining Caltrans's numerous objections. They argue the court was wrong to reject Douglas's declaration simply because the driver saw Paula. They argue a reasonable trier of fact could have found that the implementation of the traffic measures Douglas discussed in his declaration may have allowed the driver to see Paula in time to avoid the impact. They note that Douglas was a highly qualified expert,

---

[5] The trial court gave a reason for sustaining each objection. Generally, it sustained objections to the portion of the declaration addressing speed on the basis of relevance because there was no evidence that speed was a factor or that Bafford was speeding. It sustained objections to the opinions about signage and visibility on the basis of relevance and other grounds because it was undisputed that Bafford saw Paula. The trial court found Douglas's opinions as to what might have prevented the accident to be speculative and it sustained the objection to his description of the accident on the questionably valid grounds of hearsay and lack of foundation. Douglas's opinion that 45 miles per hour was too fast for an unprotected crosswalk was excluded as irrelevant, lacking foundation and in violation of the secondary evidence rule.

and, although the driver saw Paula before the accident, under *Lane*, factors other than third party negligence should be considered in determining whether there is a dangerous condition. (*Lane, supra*, 183 Cal.App.4th at pp. 1347–1348.)

Caltrans argues that plaintiffs have forfeited any argument as to the trial court's ruling to exclude most of the Douglas declaration. Caltrans contends that plaintiffs have failed to seek review of these rulings or to advance "reasoned argument or legal analysis" on the issue. In reply, plaintiffs claim their challenge to the evidentiary rulings are adequate and neither the rules of court nor case law require more. We disagree.

■ It is appellant's "burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error." (*Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114 [29 Cal.Rptr.3d 127].) While plaintiffs on appeal explicitly state that the trial court erred in sustaining the objections to the Douglas declaration, they fail "to identify the court's evidentiary ruling as a distinct assignment of error, and there is no separate argument heading or analysis of the issue." (*Ibid.*; see also *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830–1831, fn. 4 [41 Cal.Rptr.2d 263].)

More importantly, plaintiffs failed to carry their burden to affirmatively show error in the trial court's rulings on the evidentiary objections. The trial court provided various and varying reasons for sustaining 25 separate objections to Douglas's declaration. Plaintiffs make no attempt to demonstrate how each evidentiary ruling was erroneous. They have not specified the evidentiary objections to which their cursory argument is addressed, nor have they discussed the multiple grounds on which each objection was sustained. Simply claiming that Douglas is well qualified and that many factors must be considered in determining a dangerous condition fail to carry the burden to show error. In arguing only generalities, plaintiffs' briefs do not contain "argument and citations to authority as to why the trial court's evidentiary rulings were wrong." (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1198 [73 Cal.Rptr.3d 343].) "We are not required to search the record to ascertain whether it contains support for [plaintiffs'] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545 [35 Cal.Rptr.2d 574].)

Because plaintiffs failed to properly raise a challenge to the court's many evidentiary rulings and failed to support such challenge with reasoned argument and citations to authority, they have forfeited their challenge to the exclusion of most of Douglas's declaration. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

## VI

### *Lack of Triable Issue of Material Fact*

With the exclusion of the traffic collision reports and the majority of Douglas's declaration, the only remaining evidence offered in opposition to Caltrans's motion for summary judgment was the deposition of Duper Tong. In his deposition, Tong testified an investigation of the intersection had been completed in September of 2007. The investigation had been initiated by Table C, a system that identifies high collision concentrations on state highways. This evidence gives no information about the type or cause of collisions. As such it does not show the collisions were due to a dangerous condition and thus is insufficient to raise a triable issue of material fact as to whether the accident site was a dangerous condition of public property.[6]

## DISPOSITION

The judgment is affirmed.

Raye, P. J., and Robie, J., concurred.

---

[6] Because we affirm the judgment on the basis that plaintiffs failed to raise a triable issue of fact whether the intersection is a dangerous condition of public property, we need not address the effect of Government Code sections 830.4 and 830.8.