Filed 7/10/13  Ortiz v. Siddiqui CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELVIRA ORTIZ et al., | B239684 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC043501) |
| v. | |
| ISRAR SIDDIQUI et al., | **ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |
| Defendants and Respondents. | |

THE COURT:*

It is ordered that the opinion filed herein on June 24, 2013, and not certified for publication, be modified as follows.

At the bottom of page 12, line 5 of the paragraph under the subheading "Other Objections," replace "plaintiffs" with "defendants."

There is no change in the judgment.

_____

\*    TURNER, P. J.                                                                          KRIEGLER, J.

Filed 6/24/13 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELVIRA ORTIZ et al., | B239684 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. NC043501) |
| v. | |
| ISRAR SIDDIQUI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roy L. Paul, Judge.  Affirmed.

Law Office of Rosalinda V. Amash, Rosalinda V. Amash; Law Office of Matthew P. Fletcher and Matthew P. Fletcher for Plaintiffs and Appellants.

Lewis Brisbois Bisgaard & Smith, Roy G. Weatherup, David B. Shapiro, Caroline E. Chan, and Lynda Kim for Defendants and Respondent.

_____

Plaintiffs and appellants Elvira Ortiz, Jorge Aguirre, and Jaime Aguirre appeal from the trial court's order granting defendants and respondents Israr Siddiqui's and Sadeeda Akhtar Siddiqui's motion for summary judgment in this action for negligence, wrongful death, gross negligence, emotional distress, and premises liability. Plaintiffs contend defendants owed Jorge and Francisco Aguirre (now deceased) a duty, as patrons, to protect them from injury by third parties. They further contend there is a triable issue of fact with respect to whether defendants' inaction caused the injuries suffered. Finally, plaintiffs assert the judgment must be reversed because the trial court abused its discretion in overruling their evidentiary objections.

We affirm the judgment.

**FACTS**

*Events Precipitating the Lawsuit*

At around 1:00 a.m. on January 19, 2008, Samuel Pinto and Carlton Benson drove to a 7-Eleven located at 1519 N. Gaffey in San Pedro in a white van. Pinto was the driver of the van and parked directly in front of the store in a 10-minute parking zone. Pinto and Benson purchased beer, cigarettes, and soda. After departing the store, they remained parked in the van for a few minutes. Pinto and Benson may have been drinking alcohol and/or smoking marijuana in the van. While Pinto and Benson were parked in the lot, a group of approximately 10-15 people, including Francisco and plaintiffs Jamie and Jorge, arrived at the 7-Eleven in a limousine bus. The bus was parked on Capital Drive, north of the 7-Eleven. Gene Solano and Delilah Smith got out of the bus, went into the 7-Eleven, and almost immediately exited the store. On their way out, they had a brief verbal exchange with Pinto and Benson. Neither Pinto nor Benson got out of the vehicle. Upon returning to the bus, Solano and Smith warned the rest of the group that the men in the van might cause trouble. Jaime and Jorge left the bus and could hear yelling or arguing as they walked across the parking lot. When Jorge was making his

2

purchases, he saw commotion and arguing in front of the store and could clearly see people in the van, which was still parked in front of the store.[1]  He noticed the store clerk looking out the window.  Shortly thereafter, Pinto backed his van out of the parking space and idled it, facing the group on the bus.  Members of the group said that Pinto briefly jumped out of the van and then got back in.  Three minutes later, Pinto drove forward, toward the group.  He quickly reversed the van and then drove into the group, hitting both Jorge and Francisco.  Jorge was injured as a result.  Francisco was killed almost instantly.  Pinto fled the parking lot, dragging Francisco's body into the street under the van.  Veronica Rodriguez, one of the women on the bus, ran inside the 7-Eleven and yelled for the store clerk, Mahmood Shams, to dial 9-1-1, which he did.  Police arrived at the scene approximately eight minutes after receiving the call.

*The Lawsuit*

On April 8, 2010, Elvira,[2] Jaime, and Jorge sued the 7-Eleven franchisees, Israr and Sadeeda.[3]  Subsequently, they filed a first amended complaint and a second amended complaint.  The operative second amended complaint, filed on January 25, 2011, alleged that defendants had reasonable cause to foresee the events leading to Francisco's death and the injuries to plaintiffs, claiming negligence, wrongful death, gross negligence, emotional distress and premises liability.

Plaintiffs claimed that Francisco's death, Jorge's injuries, and the emotional distress suffered by Jorge and Jaime were caused by defendants' wrongful acts;

---

[1]     Video surveillance footage shows the van clearly for the time it was parked and does not depict a commotion or confrontation involving anyone inside the camera's range.

[2]     Elvira was the mother of Francisco and his surviving heir.

[3]     Pinto was also a named defendant, but was not a party to the motion for summary judgment.  We do not discuss those portions of the second amended complaint that apply to Pinto.

3

specifically, by their failure to prevent Pinto from driving his vehicle absent reasonable care and endangering the safety of Francisco and Jorge. Plaintiffs alleged defendants owned, maintained, controlled, managed, and/or operated the 7-Eleven store, were responsible for the condition of the premises, and contributed to the harm plaintiffs suffered. Plaintiffs claimed that defendants owed them a duty of care as patrons or business invitees. Defendants failed to take affirmative action to control Pinto, who was on their premises, despite having reasonable cause to foresee the consequences to plaintiffs. The complaint identified events that allegedly led to the incident and asserted that there were measures reasonably available to defendants to prevent what happened, including: "preventing patrons such as Pinto from consuming drugs and alcohol while in their parking lot, failing to take steps to avert . . . Pinto's actions, failing to notify police of criminal activities, failing to avert possible imminent fights, preventing loitering in its parking lot, failing to warn patrons that they were in danger of substantial and increased risk of bodily injury at the premises, having a policy and practice of ignoring criminal activity on its premises, failing to provide adequate security, and failing to otherwise exercise due care."

On February 23, 2011, defendants answered the second amended complaint, denying the allegations and asserting numerous affirmative defenses. These included failure to state a cause of action, intervening and superseding causation, and lack of causation.

On August 12, 2011, defendants filed their motion for summary judgment, a separate statement of undisputed material facts, lodging of exhibits, and declarations of Israr, Shams, Daniel Sullivan, and David Shapiro in support of the motion. Defendants argued that the incident was not reasonably foreseeable, and that they had no duty to plaintiffs, or alternately, satisfied any duty to plaintiffs by calling the police following the incident. They further contended there was no evidence of causation. They asserted that they could not be held liable as a matter of law.

4

On December 15, 2011, defendants filed a notice of filing of a duplicate and notarized declaration of Israr and the duplicate and notarized declaration of Abrar Siddiqui.

On December 20, 2011, plaintiffs filed their opposition to defendants' motion for summary judgment, evidence in support of plaintiffs' opposition, plaintiffs' objections to evidence submitted by defendants, plaintiffs' opposition to defendants' separate statement of undisputed material facts, and plaintiffs' separate statement of additional facts.

On December 29, 2011, defendants filed their reply to plaintiffs' opposition to motion for summary judgment, defendants' reply to plaintiffs' response to defendants separate statement of undisputed material facts, defendants' response to plaintiffs' additional facts, defendants' response to plaintiffs' objections to evidence, the supplemental declaration of Israr, the declaration of Abrar Siddiqui, defendants' evidentiary objections to the declaration of Robert Gardner, and the declaration of Lynda Kim.

On January 3, 2012, the trial court granted defendants' motion for summary judgment. The court found that defendants did not owe a duty to protect plaintiffs from harm and that plaintiffs failed to raise a triable issue of material fact as to the element of causation. Additionally, the court overruled the majority of plaintiffs' evidentiary objections.

The trial court admitted the untimely supplemental declaration of Israr and the declaration of Abrar.

On January 24, 2012, judgment was entered in defendants' favor. Notice of entry of judgment was served on January 30, 2012. A timely notice of appeal from the judgment was filed on March 2, 2012.

**DISCUSSION**

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The moving party bears the burden to demonstrate 'that there is no triable issue of material fact and that [it] is entitled to judgment as a matter of law.' [Citation.] If the moving party makes a prima facie showing, the burden shifts to the party opposing summary judgment 'to make [its own] prima facie showing of the existence of a triable issue of material fact.' [Citation.] 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' [Citation.]" (*Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1246.)

In making and opposing motions for summary judgment, the parties must include all material facts in their separate statements and cite to evidence to support those facts. (Code Civ. Proc., § 437c, subds. (b)(1) & (b)(3).) The trial court has discretion not to consider facts that are not referenced in the moving or opposing parties' separate statement. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315-316.)

We review summary judgment orders de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) "We do not resolve conflicts in the evidence as if we were sitting as the trier of fact. [Citation.] Instead, we draw all reasonable inferences from the evidence in the light most favorable to the party opposing summary judgment. [Citation.] All doubts as to the propriety of granting summary judgment are resolved in favor of the opposing party. [Citation.]" (*Nadaf-Rahrov v. Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 961.)

"'A different analysis is required for our review of the trial court's . . . rulings on evidentiary objections. Although it is often said that an appellate court reviews a summary judgment motion "de novo," the weight of authority holds that an appellate

6

court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard. [Citations.]' [Citation.]" (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.)

### *The Trial Court's Rulings on Plaintiffs' Evidentiary Objections Do Not Require Reversal of the Grant of Summary Judgment*

A motion for summary judgment must be supported "by affidavits, declarations, admissions, answers to interrogatories, depositions, and matters of which judicial notice shall or may be taken." (Code Civ. Proc. § 437c, subd. (b)(1).) Evidence offered in support of the motion must be admissible. (*City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 784 (*City of Long Beach*).) Evidence is admissible if it "is capable of being admitted at trial, i.e., evidence which is competent, relevant and not barred by a substantive rule." (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1147.) "Part of the judicial function in assessing the merits of a summary judgment or adjudication motion involves a determination as to what evidence is admissible and that which is not." (*City of Long Beach*, *supra*, at p. 784.) Accordingly, we first address the question of whether the trial court abused its discretion in overruling plaintiffs' evidentiary objections.

Plaintiffs made numerous objections to defendants' evidence, which the trial court ruled upon in groupings by type and ultimately overruled in great part. Defendants argue that plaintiffs have forfeited their objections on appeal by failing to address each specific objection with particularity; however, because the trial court structured its rulings into groupings of like objections, to the extent that plaintiffs have sufficiently and specifically challenged the rulings as to those groupings, we conclude they have preserved those claims, and we will consider them here. We will not, however, refer to plaintiffs' evidentiary objections and the arguments made therein with respect to each of the 65 separate objections, as plaintiffs request. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 (*Salas*) [where plaintiffs failed to challenge specific

7

objections and make reasoned arguments and citations to authority, they have forfeited their challenge].)  "'We are not required to search the record to ascertain whether it contains support for [plaintiffs'] contentions.'  (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.)"  (*Salas, supra*, at p. 1074.)  We decline to do so here.

Finally, our review extends only to those objections whose resolution is essential to our ruling.  Even assuming the trial court erred in overruling certain evidentiary objections, an erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error."  (*Robertson v. Fleetwood Travel Trailers of California, Inc*. (2006) 144 Cal.App.4th 785, 815; Cal. Const., art. VI, § 13; Evid. Code, § 354.)

### *Objections to Israr Siddiqui's Declaration*

Israr's declaration stated he was the president of Fatima Stores, Inc., and the franchisee of the 7-Eleven at issue since November 1, 2004.  He had never witnessed or been advised of any similar violent incident prior to the one at issue.  He had never received a complaint from any person, business, or regulatory agency regarding safety issues with the store.  He had not witnessed any violent tendencies on the part of Pinto, Benson, Jorge, Jaime, Francisco, or any other individual in the bus group prior to the incident.

Israr further declared that he arranged to obtain the surveillance footage from the store's security camera recorded on the night of the incident.  He was familiar with the procedures for obtaining copies of the surveillance footage.  He explained that the surveillance footage sequenced images from one camera inside the store and one camera outside the store on January 19, 2008, capturing the incident.  He attested that the footage

8

was not edited or altered and identified a true and correct copy of the surveillance footage depicting the incident.[4]

Plaintiffs first object to the declaration of Israr as untrustworthy and prejudicial on the basis that in his deposition, which was conducted in Urdu, he indicated he did not understand the meaning of some phrases contained in his declaration, which is written in English. Plaintiffs have not indicated where these alleged statements occur in the deposition or what Israr purportedly misunderstood, nor have they provided legal authority in support of their argument. They have therefore forfeited this challenge to the trial court's ruling. (See *Salas*, *supra*, 198 Cal.App.4th at p. 1074.)

Plaintiffs next object to Israr's declaration on the basis that the statements contained therein were not within his personal knowledge but were instead based on hearsay and conclusions reached upon viewing the surveillance video. Israr's declaration stated only that he was the franchisee of the 7-Eleven store, and that he was not personally aware of any similar violent incident or any specific violence or violent tendencies concerning the parties involved. The declaration did not state that Israr was present at, or witnessed, the incident.[5] Thus, the declaration contains nothing that was not within his personal experience, and the trial court did not abuse its discretion in overruling the objection.

*Objections to the Video Surveillance Footage*

The surveillance footage from the camera outside the store shows Pinto and Benson entering the 7-Eleven parking lot at 1:44 a.m. on January 19, 2008. Pinto and Benson were in the store for four minutes buying beer, soda, and cigarettes. They were

---

[4]    Plaintiffs questioned the reliability of Israr's declaration. In response, defendants filed an identical notarized declaration.

[5]    Plaintiffs suggest that Israr testified that his declaration was based on reviewing the video surveillance footage but do not specify where this testimony takes place in the deposition.

back inside the van at 1:49 a.m. Five minutes later, Solano and Smith entered the store. They left the store within 30 seconds. Solano and Smith had a verbal exchange with Pinto and Benson that lasted less than a minute. They were at a distance from the van, and neither Pinto nor Benson got out of the van. At 1:55 a.m., Pinto backed the van out of the parking space and idled it facing in the direction of the bus group. The group was not visible in the surveillance footage. Three minutes later, Pinto drove the van in the direction of the bus group. Pinto quickly reversed the van, which came into view of the surveillance camera briefly, and then drove toward the group again.

The surveillance footage from the camera inside the store shows Rodriguez running into the 7-Eleven a few minutes after the van accelerated toward the bus group the second time and speaking urgently to the store clerk who immediately dialed the phone at the counter.

During the time between Pinto and Benson's arrival and departure, the cameras show multiple persons entering the store and making purchases.

Plaintiffs object to admission of the surveillance video, which they claim lacked a proper foundation. A video recording is a "writing" under Evidence Code section 250 and must be authenticated under the requirements of Evidence Code section 1401. (*Jones v. City of Los Angeles* (1993) 20 Cal.App.4th 436, 440, fn. 5.) Evidence Code section 1400 provides: "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." Israr's declaration states that he was the franchisee of the store, was familiar with the procedure for removing the store's video camera, and that the video was a true and correct copy that was not edited in any manner. His supplemental declaration, which was accepted by the court, states that he removed the video and provided it to the police. This evidence is sufficient to sustain the finding that the video is what Israr declares it is. (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 990 ["[A] video recording is authenticated by testimony or other evidence that it actually depicts what it is purported to show."].)

10

Plaintiffs further object to admission of the surveillance video on the ground that it appears altered. Israr's supplemental declaration explains that the video appears to skip because it only captures footage when there is an object moving within the camera's view. This explanation, based on Israr's familiarity with the video equipment in his store, was sufficient basis for the trial court to conclude the requirement that defendants account for the appearance of alteration in the video under Evidence Code section 1402 had been met. (Evid. Code, § 1402 ["The party producing a writing as genuine which . . . appears to have been a altered . . . must account for the alteration or appearance thereof."]) Thus, the trial court did not abuse its discretion in overruling plaintiffs' objections to the surveillance video.

*Objection to Shams's Declaration*

Shams's declaration stated that he had been employed as a store clerk at the 7-Eleven for three and a half years and was working there when the incident occurred. Two men entered the store before 2:00 a.m., made a purchase, and left. Shams later discovered the two men were Pinto and Benson. A man and a woman came into the store and asked to use the restroom. They left immediately after Shams informed them there was no public restroom. Sometime between 1:50 a.m. and 2:00 a.m., Shams was assisting a customer at the counter and observed people in the parking lot but did not see any violence occurring. While he was still assisting the customer, a woman ran into the store and asked him to call 9-1-1 because of something that had occurred outside. Shams called police and requested their assistance at the store. While he was speaking with police, another woman came in and asked him to call 9-1-1. The police arrived approximately eight minutes after Shams placed the call to them.

Shams was unaware of any incident until the woman ran in and told him to call the police. He did not witness any verbal or physical exchange between Pinto, Benson, and the bus group. Shams did not anticipate that a physical altercation might take place between Pinto, Benson, and the bus group. He had not observed Pinto or Benson

11

smoking or drinking before the incident occurred. Shams did not see Pinto or Benson inside the store at the same time as anyone in the bus group and did not observe Pinto or Benson talking about anyone in the bus group, nor did he observe anyone in the bus group talking about Pinto or Benson.

Shams never saw anyone in the bus group, or Pinto or Benson, draw a weapon. No one told him that they felt threatened or endangered, and no one asked him to call police until after the incident occurred. Shams had not witnessed any similar violent incidents on the premises prior to the incident. He had not witnessed or been told about any violent tendencies of Pinto or Benson, or anyone in the bus group.

Plaintiffs object to Shams's declaration as untrustworthy and prejudicial on the basis that, like Israr, in his deposition, which was conducted in Urdu, Shams indicated he did not understand the meaning of some phrases contained in his declaration, which is written in English. As with their objection with respect to Israr's, plaintiffs have forfeited this challenge by failing to support it with factual evidence or citations to authority. (See *Salas*, *supra*, 198 Cal.App.4th at p. 1074.)

### *Other Objections*

Plaintiffs also object to counsel Shapiro's declaration, which purports to authenticate several exhibits in support of the motion for summary judgment not discussed here. We need not decide whether the trial court abused its discretion with respect to those objections, because even assuming the identified documents were not properly authenticated or were inadmissible, plaintiffs would still prevail as a matter of law.

### *The Trial Court Correctly Ruled Defendants Did Not Owe Plaintiffs a Duty of Care*

"To prevail on [an] action in negligence, plaintiff must show that defendants owed [him or] her a legal duty, that they breached the duty, and that the breach was a proximate

or legal cause of [his or] her injuries." (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 (*Sharon P.*), disapproved on other grounds in *Aguilar*, *supra*, 25 Cal.4th at p. 853, fn. 19.)[6]  The initial burden lies with the defendant moving for summary judgment to show that plaintiff cannot establish one or more elements of the cause of action.  (Code Civ. Proc., § 437c; *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142.)  The burden then shifts to the plaintiff if the defendant meets this burden.  (*Ibid*.)

In general, no duty exists to protect others from the criminal activity of third parties.  (*Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425, 435.) Courts recognize a special relationship between business proprietors and their patrons or invitees, however, which imposes the duty to " 'maintain land in their possession and control in a reasonably safe condition' and . . . [take] 'reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures.' [Citations.]" (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 237 (*Delgado*).)

"The existence and scope of a duty are questions of law for the court's determination, and foreseeability is a critical factor in the analysis.  When foreseeability is analyzed to determine the existence or scope of a duty, foreseeability is also a question of law.  [Citation.]" (*Ericson v. Federal Express Corp.* (2008) 162 Cal.App.4th 1291, 1300 (*Ericson*), fn. omitted.)

Courts employ a four-step analysis when determining whether a duty of care exists.  "'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm.  This frames the issue for the court's determination by defining the scope of the duty under consideration.  Second, the court must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly burdensome under the facts of the case.  Third, the court must identify the

---

[6]     All of plaintiffs' asserted causes of action are predicated on negligence; thus, if defendants either had no duty to plaintiffs or if there is no triable issue of fact with respect to causation, summary judgment is appropriate as to all claims.

13

nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable (on a continuum from a mere possibility to a reasonable probability) it was that this conduct would occur. Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant. The more certain the likelihood of harm, the higher the burden a court will impose on a landlord to prevent it; the less foreseeable the harm, the lower the burden a court will place on the landlord.'  [Citation.]" (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1214, citing *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 285.)

"In circumstances in which the burden of preventing future harm caused by third party criminal conduct is great or onerous . . . heightened foreseeability—shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—will be required.  By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only 'regular' reasonable foreseeability as opposed to heightened foreseeability is required." (*Delgado*, *supra*, 36 Cal.4th at p. 243, fn. 24.)

Here, the specific measures that plaintiffs claim defendants should have taken are requiring the store clerk to patrol the premises; to monitor patrons' activities inside and outside of the store, particularly in the early morning hours; to warn patrons of increased dangers; and to report illegal activities on the premises to the police.  Plaintiffs assert that these measures are minimally burdensome because there are already procedures in place for monitoring of the store and parking lot, checking for dangerous conditions including persons loitering or drinking alcohol on the premises, removing persons who are engaging in illegal or suspect activities from the premises, and alerting others to their presence.  While perhaps facially attractive, the argument fails to take into account that when a single store clerk is assisting customers at the cash register, he is not able to simultaneously attend to all of the aforementioned duties and thwart criminal activity, particularly when an incident occurs beyond the view of security cameras and without warning.  Embedded in their request is the requirement that all of these duties be

14

performed in a space of less than ten minutes while the store clerk is attending to his various other duties.  When viewed within the lens of realistic human capability, plaintiffs are, in essence, suggesting the equivalent of requiring defendants to either employ a second clerk to be on duty at all times to perform these functions or to hire security.  Our Supreme Court has held such a requirement to be a heavy burden on business owners and has assessed the proprietor's duty under a heightened foreseeability standard, as we will here.  (See, e.g., *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 (*Ann M.*), disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512; *Sharon P., supra,* 21 Cal.4th 1181.)

Balanced against this burden is the great unlikelihood that this incident could have been foreseen.  First, there was no evidence of prior similar crimes having taken place at the 7-Eleven.  Israr attested that he had no knowledge of prior similar crimes and had never been alerted to any by anyone.  In his deposition, he stated he was aware of robberies that had occurred in the past, but robberies differ substantially in nature from deadly assault with a vehicle—the presence of the one crime does not predict the other.

Moreover, there were no other signs that such violent criminal activity would take place.  There is no indication that Pinto and Benson were acting suspiciously or aggressively when they entered the 7-Eleven and made their purchases.  After leaving the store, they remained in the van and in the parking space for only a few minutes.  The verbal exchange that took place between Solano and Smith and Pinto and Benson lasted less than a minute, and there were no outward signs that the exchange was hostile.  The parties were many feet apart for the entire exchange, and neither Pinto nor Benson exited the van.  After this short span of time, Pinto backed the van out of the parking space and appeared to be leaving.  Shams was behind the counter assisting a customer when the incident occurred.  No one previously alerted him to the possibility that Pinto and Benson were drinking alcohol and smoking marijuana or acting aggressively toward other customers.  No one in the bus group expressed concern for their own safety or for the safety of anyone in their group.  There was simply no warning that Pinto, who was in the parking lot for less than 10 minutes and had not had a visible hostile interaction with

15

anyone, would suddenly decide to drive his van into the midst of a group of people, reverse, accelerate a second time, and then run over people in the group, even if he had ingested alcohol or inhaled marijuana in the few minutes that the van was parked before the incident began. Under these facts, only regular reasonable foreseeability is required.

Plaintiffs' argument that this case is analogous to *Delgado*, *supra*, 36 Cal.4th 224 and *Morris v. De La Torre* (2005) 36 Cal.4th 260 (*Morris*), where the court held that a duty of care existed between the proprietor and customer or invitee, is unpersuasive. Those cases are clearly distinguishable because there was *actual* notice to employees that a crime could likely occur, and as a result, the burden on the proprietor was minimal.

In *Delgado*, the plaintiff and his wife were at a bar late at night. Delgado got into a staring match with another man and several of his friends. There were two security guards at the restaurant—one inside and one outside. Delgado's wife talked to the guard inside about the staring and expressed concern that there might be a fight. The guard also observed the tension between Delgado and the other men and became concerned that a fight might break out at any minute, so he asked Delgado and his wife to leave. The guard did not escort the couple to their car, nor did he prevent the other men from following Delgado outside. The guard's outside counterpart was absent from the lot. There was a group of 15-20 men standing outside, which the guard would have normally caused to disburse, in keeping with the bar's policy. Instead, the men from inside the bar attacked Delgado and were aided by the large group in the parking lot. (*Delgado*, *supra*, 36 Cal.4th at p. 231.)

The *Delgado* court refused to impose on the bar the burdensome duty of hiring additional security in the absence of prior similar crimes or indications that such a crime would occur but held that it did have a duty "to respond to events unfolding in its presence by undertaking reasonable, relatively simple, and minimally burdensome measures," such as requiring the inside guard to prevent the men following Delgado from leaving the bar or confirming that the outside security guard was, in fact, present. (*Delgado*, *supra*, 36 Cal.4th at p. 245.)

16

In *Morris*, a gang member came into a restaurant, first demanded and then stole a large kitchen knife, and went into the parking lot and began stabbing an invitee while the restaurant employees watched and did nothing to prevent the attack. (*Morris*, *supra*, 36 Cal.4th at pp. 265-267.) The *Morris* court also held the restaurant had a duty of care to the victim, because its employees could easily foresee the immediate danger to the victim and could have undertaken the unburdensome task of dialing 9-1-1 to summon help. (*Id.* at pp. 274-278.)

Here, the store clerk responded by calling police when given actual notice of the incident, and thus met the standard of care that the *Delgado* and *Morris* courts imposed. The burden that plaintiffs wish to impose is not the minimal one of summoning help or taking measures to diffuse a situation that is known to the store clerk. It is the much greater burden of ensuring that the store has adequate personnel on hand to detect the possibility of a crime that has no precedent on the premises in a very short span of time. In such a situation, there is no such duty absent heightened foreseeability. (See, e.g. *Ann M.*, *supra*, 6 Cal.4th 666 [no duty to hire security following rape in shopping complex absent evidence of prior similar crimes]; *Sharon P.*, *supra*, 21 Cal.4th 1181 [no duty to hire security or take other measures such as improving lighting, reinstalling video cameras, or requiring existing personnel to conduct walk-throughs of parking lot following sexual assault absent evidence of prior similar crimes].) As we have discussed here, the burden plaintiffs would impose on defendants is great, and the type of harm that occurred was not reasonably foreseeable. Under these facts, we conclude that defendants had no duty to plaintiffs and have met their burden of proof. Absent this essential element, plaintiffs cannot prevail on their claims as a matter of law, and summary judgment is appropriate.

Having determined that defendants are under no duty to plaintiffs, we need not address whether there is a triable issue of fact with respect to causation.

17

## DISPOSITION

The order granting summary judgment and judgment in favor of defendants is affirmed.  Costs on appeal are awarded to Israr Siddiqui and Sadeeda Akhtar Siddiqui.



KRIEGLER, J.


We concur:



TURNER, P. J.



O'NEILL, J.*

---

\*      Judge of the Ventura County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.