Filed 9/22/21  Devries v. Renaissance Hotel Management Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LAURIE DEVRIES et al., | B298045 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC552750) |
| RENAISSANCE HOTEL MANAGEMENT COMPANY, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Timothy Patrick Dillon, Judge.  Affirmed.

Law Offices of Alain V. Bonavida and Alain V. Bonavida for Plaintiffs and Appellants.

Ford, Walker, Haggerty & Behar and Edye A. Hill for Defendants and Respondents.

_____

Laurie Devries slipped on a wet surface at the entrance to the Renaissance LAX Hotel and broke her leg. She and her husband, Lee Devries, sued Renaissance Hotel Management Company, LLC, Sunstone Hotel Investors, Inc., Renaissance Hotel Operating Company and Sunstone LA Airport LLC (collectively Renaissance companies), entities that own or control the hotel, for negligence, premises liability and loss of consortium. A jury found in favor of the Renaissance companies, and judgment was entered in their favor.

On appeal the Devrieses contend the trial court committed prejudicial error in excluding from evidence a video of an unrelated accident at the hotel. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Accident*

On November 17, 2012, after a six-hour flight, the Devrieses arrived at the Renaissance LAX Hotel with their son and daughter. After registering, they went to their room to change for dinner. Laurie Devries put on rubber-soled sandals (flip-flops). The family walked across the street in the rain without umbrellas to a fast-food restaurant.

Returning to the hotel, the Devrieses walked on wet sidewalks, across a wet street and through the wet valet area. As Laurie Devries approached the hotel, she encountered a sign in her path, stepped around it and walked into the hotel without crossing the floor mat at the entrance. As she crossed the threshold, she slipped on the polished marble tile surface inside the hotel's front door, falling on her right leg.

The injury was serious. Laurie Devries suffered a broken tibia and fibula, went into shock and was transported by ambulance to a nearby hospital. Surgery was scheduled for

2

10 days after the accident (after the family's planned seven-day Disney cruise vacation). The surgeon inserted four screws and a rod through Laurie Devries's right leg. As of the time of trial, she still had the rod and one screw in her leg.

2. *The Complaint*

The Devrieses sued the Renaissance companies for negligence, premises liability and, as to Lee Devries, loss of consortium. The complaint alleged the Renaissance companies failed to cover a known dangerous condition (the wet, slippery marble floor) with a floor mat and failed to have proper signage warning of a wet floor.

3. *The Security Camera Footage*

The Renaissance companies provided video footage of Laurie Devries's accident, originally captured by a security camera and copied onto a smartphone by Bryan Williams, the hotel's loss prevention supervisor and manager on duty the night of the accident. The quality of the black-and-white video footage was poor; and the video could only be viewed in fast-forward speed, making it extremely difficult to determinate exactly what had occurred. In the video the Devrieses can be seen approaching the lobby entrance's open sliding-door. Lee Devries and the couple's daughter are walking in front of Laurie Devries and their son. As Laurie Devries approaches the entrance, she walks around a sign. (It is impossible to read the words on the sign.) Laurie Devries enters the lobby through the right side of the entrance; her son enters through the left. Laurie Devries falls, and people rush toward her.

The original footage from the hotel's security camera, recorded at normal speed and with time and date stamps, was

not preserved.  The video recorded by Williams was admitted into evidence at trial.

4. *The Motion in Limine*

The Devrieses sought to introduce video footage of an accident that had occurred at the hotel on December 12, 2011, almost a year before Laurie Devries's accident.  As depicted in the contested video, a woman slipped and fell at a different entrance to the hotel as she walked through a different kind of door.  The woman was in the company of two other women; all three were carrying packages.  The packages blocked the camera's view of the woman's feet; so the video did not show what type of shoes she was wearing, whether she walked on the floor mat and whether there was water on the floor.  The Devrieses argued the video was relevant to establish the hotel's prior notice of the dangerous condition of its slippery floors.  They also intended to argue this better quality video demonstrated the Renaissance companies could have produced a better video of Laurie Devries's accident.

The Renaissance companies moved in limine to exclude all evidence of unrelated personal injury incidents at the hotel, including the December 12, 2011 video.  After reviewing the two videos, the deposition testimony of the Devrieses' expert witness, Brad Avrit, and Williams's deposition, the trial court granted the motion in limine, finding the December 2011 incident was not sufficiently similar to Laurie Devries's accident to be admissible.

The court orally explained its ruling:  "So in this situation, as I have said before, I've watched the video numerous times, and it is a different, in the court's view, situation.  It's a different doorway.  It's a different kind of door.  It's a closed door.  It's a mat inside the doorway covering the area that here it's contended

4

should have been—had some protective something on it, whether adhesive or a mat or something. . . .  Here we have a case where there's a specific area of the hotel that the plaintiff is focusing on.  It's a specific area.  It's not a general area.  It's a very specific three-tile area where the claim is being made that this was a slippery-when-wet-surface, and adequate precautions were not taken, which is different in kind than the other video of the other incident that the court watched. . . ."  "So I say that there is little, if any, relevance to the other incident.  Balanced against that, I see the potential for undue confusion, prejudice, and without any doubt, the consumption of an undue amount of time because once that other incident is introduced, then the court has to examine that entire situation and have in effect a case within a case to try to understand what happened in that situation and what was the cause of the incident . . . .  Under Evidence Code section 352, I think the relevance is questionable, if at all, and I'm balancing that against the potential for confusion, undue consumption of time, and prejudice to the defendants from introducing something that is different from, and not related to, the incident that we're having a trial about."

5. *The Trial and Verdict*

During the four-day jury trial the Devrieses presented evidence there was no caution sign at the entrance to the hotel where Laurie Devries slipped on wet marble tiles, only a valet information sign.  Williams, in contrast, testified there was a sign warning of the dangerous wet condition.  The jury found in favor of the Renaissance companies, concluding they had not been negligent.

**DISCUSSION**

1. *Governing Law and Standard of Review*

"Evidence of prior accidents is admissible to prove a defective condition, knowledge, or the cause of an accident, provided that the circumstances of the other accidents are similar and not too remote." (*Elsworth v. Beech Aircraft Corp.* (1984) 37 Cal.3d 540, 555; accord, *Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 121-122; see *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1072 ["[i]t is well settled that before evidence of previous accidents may be admitted to prove the existence of a dangerous condition, it must first be shown that the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question"].) "When evidence is offered to show only that defendant had notice of a dangerous condition, the requirement of similarity of circumstances is relaxed: "'all that is required . . . is that the previous injury should be such as to attract the defendant's attention to the dangerous situation.'""" (*Hasson v. Ford Motor Co.* (1982) 32 Cal.3d 388, 404.)

"The question of admissibility of other accidents is primarily one for the trial court and is confined to its sound discretion." (*Salas v. Department of Transportation*, *supra*, 198 Cal.App.4th at p. 1072.) Even if the other-accident evidence is sufficiently similar to be relevant and otherwise admissible, however, the trial court has discretion to exclude the evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

"A trial court's discretionary ruling under [Evidence Code section 352] '"must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice."'" (*People v. Williams* (2008) 43 Cal.4th 584, 634-635]; accord, *People v. Mungia* (2008) 44 Cal.4th 1101, 1130 [rulings made under Evidence Code section 352 "are reviewed for an abuse of discretion"]; see *Phillips v. Honeywell Internat. Inc.* (2017) 9 Cal.App.5th 1061, 1081 ["[w]hen weighing probative value against the danger of prejudice, a trial court is deemed to have abused its discretion if its decision was arbitrary, capricious, or patently absurd and resulted in a manifest miscarriage of justice"]; see generally *People v. Flores* (2020) 9 Cal.5th 371, 409 [the trial court's evidentiary rulings are reviewed for abuse of discretion]; *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317 ["[t]rial court rulings on the admissibility of evidence, whether in limine or during trial, are generally reviewed for abuse of discretion"].) There is no abuse of discretion requiring reversal ""'as long as there exists a reasonable or even fairly debatable justification, under the law, for the action taken."'" (*People v. Moore* (2011) 51 Cal.4th 1104, 1120; accord, *Gonzales v. Nork* (1978) 20 Cal.3d 500, 507; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 957.)

2. *The Court Did Not Err in Finding the Incidents Were Not Substantially Similar and Excluding the December 2011 Video Pursuant to Evidence Code Section 352*

The trial court acted well within its discretion in determining the December 12, 2011 accident at the hotel was not sufficiently similar to Laurie Devries's accident such that evidence of that earlier incident should be admitted at trial as proof of the Renaissance companies' notice of the allegedly dangerous condition responsible for Laurie Devries's injuries. As the court explained, the two events occurred nearly a year apart and took place at different entrances to the hotel, where the doors, doorways and flooring were apparently different.

At the very least, because the woman who fell in 2011 was carrying packages that blocked the surveillance camera's view of her feet and shoes, it was not possible to easily assess the similarities between the two events. Admission of the 2011 video, therefore, would have led, as the trial court stated, to a "case within a case," with the parties necessarily litigating the circumstances surrounding the earlier accident. The court's finding under Evidence Code section 352 that these additional issues would require an undue consumption of time was certainly reasonable.

In addition to its alleged relevance regarding notice of a dangerous condition, the Devrieses argued the video of the earlier incident was relevant to show the Renaissance companies failed to produce the best evidence of Laurie Devries's accident. The court's ruling excluding the video, they insist, prevented them from arguing the jury should draw an inference adverse to the Renaissance companies based on the poor quality of the copy of the surveillance camera footage made by Williams.

This additional argument also fails.  The 2011 video was unnecessary for the Devrieses to make this point at trial, which they did through their cross-examination of Williams, who had no adequate explanation for his failure to preserve the surveillance camera video footage, and during their closing argument.

In argument to the jury, for example, the Devrieses' counsel told the jury, "So the hotel had the ability and the power to produce better evidence because they owned the signs.  So they provided weaker evidence.  They provided a very strange video that's dark and in fast-forward motion for some odd reason, and the video they produced was Mr. Williams' iPhone video of the surveillance system video, not an exported copy with time and date stamp and at normal speed. . . .  So you should distrust the evidence of Mr. Williams' declaration."  Additionally, the court instructed the jury with CACI No. 203, which states, "You may consider the ability of each party to provide evidence.  If a party provided weaker evidence when it could have provided stronger evidence, you may distrust the weaker evidence."

Any minimal probative value from actually showing the jury a better quality video was plainly outweighed by the possibility of confusion and prejudice from playing footage of an entirely unrelated slip-and-fall accident, even putting aside the undue consumption of time that would likely have ensued from the need for additional evidence to explain the dissimilarities in the two events.  Excluding the video was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed.  The Renaissance companies are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


FEUER, J.


IBARRA, J.*

---

*      Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.