Filed 8/3/23  Marriage of Wehrli CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of AMBER L. and JOHN E. WEHRLI. | |
| | D079527 |
| AMBER L. BERRY, | |
| Appellant, | |
| v. | (Super. Ct. No. DN172161) |
| JOHN E. WEHRLI, | |
| Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Patti C. Ratekin, Commissioner.  Affirmed.

Amber L. Berry, in pro. per., for Appellant.

Stephen Temko for Respondent.


Appellant Amber L. Berry (Mother) appeals a postjudgment order, issued on June 24, 2021, that modified a prior joint custody order by awarding respondent John E. Wehrli (Father) sole legal and physical custody of their children.  On appeal, she contends:  (1) the trial court erred by

issuing domestic violence restraining orders against her in 2020; (2) the court erred by modifying the prior custody order without finding there were changed circumstances; (3) substantial evidence does not support a finding there were changed circumstances; (4) substantial evidence does not support a finding that Father's requested change in custody was in the children's best interest; (5) the court erred by admitting certain expert testimony; (6) the court erred by allowing Father to draft and submit a proposed statement of decision to the court without serving her with a copy and by not complying with certain rules in issuing the final statement of decision and findings and order after hearing; (7) the court erred by denying her requests for awards of attorney fees and by relieving her counsel and the children's counsel before trial; and (8) the court erred by awarding Family Code section 271[1] sanctions against her. As explained below, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2005, Mother and Father married and thereafter had three children. In 2012, they separated and Mother filed a petition for dissolution of their marriage. In 2013, following mediation, Mother and Father entered into a stipulation, and the trial court ordered, that they have joint legal custody and shared physical custody of the children pursuant to the schedule set forth in their stipulation.

On January 8, 2015, the court entered a judgment dissolving the parties' marriage and bifurcating its resolution of the remaining issues pursuant to section 2337. In August, the parties entered into a stipulation for entry of a judgment regarding the remaining issues. On January 8, 2016, the court entered a judgment on reserved issues pursuant to the parties'

---

[1] All statutory references are to the Family Code unless otherwise specified.

2

stipulation, including an order regarding child custody.  In particular, that judgment ordered that the parties have joint legal and physical custody of the children and share time with the children pursuant to the schedule set forth in their stipulation.  The parties expressly stipulated as follows:

> "The parties agree the foregoing child custody, visitation and sharing provisions are in the best interests of the minor children.  They further agree these provisions are intended to constitute a final judicial custody determination pursuant to *Montenegro v. Diaz* (2001) 26 Cal.4th 249.  In the event either party wishes to modify the child custody, visitation or sharing provisions stated herein, that party shall be required to demonstrate a significant change of circumstances justifying such a modification."

Per the parties' stipulation, that judgment further ordered as follows:

> "[4]J.  Neither party shall say or do anything in the presence or hearing of the minor children that would in any way diminish the minor children's love or affection for the other party, and shall not allow others to do so.  Accordingly, neither party shall make derogatory comments or allow third parties to make derogatory comments about the other party in the presence of the minor children.
>
> "K.  Neither party shall create a negative attitude in the minor children of the parties toward the other party, or towards the idea of spending time with the other party.
>
> "L.  Neither party shall discuss with any minor child of the parties, other than in a general, explanatory manner, any legal proceedings between the parties, any order of the Court, or a party's non-compliance with a court order.  Specifically, each party is restrained from discussing with a child his or her opinions on the issues or the merits of the proceedings, or allowing or providing a child access to any pleadings, declarations, court orders or other materials relevant to or dealing with the proceedings."

3

On June 12, 2017, the parties entered into an amended and restated stipulation and order regarding postjudgment issues, which order the court issued pursuant to parties' stipulation. That order provided, inter alia, that:

> "[Mother] agrees and acknowledges that she shall not publish, whether in writing or electronic or photographic or videographic form, including, without limitation, posting on any on-line internet medium, social media (e.g.[,] FaceBook, Instagram, Twitter, etc.), blogs, written or electronic publications, audio communications, or other media, that is defamatory or libelous or that a reasonable person could conclude (i) is public[ly] accessible, (ii) is derogatory, disparaging, degrading, demeaning, or slandering, (iii) refers to or concerns [Father], whether by name or implication (e.g.[,] [Mother] posting regarding her "ex", "ex-husband", "father of her children", or any reference to employer, title, or personally identifiable information (e.g.[,] social security number, job title, employer, medical information protected under HIPAA, phone numbers, home address, email address[,] etc[.])), and (iv) harms or can harm or cause emotional distress to, [Father] or [Father's] family, or harm or can harm [Father's] professional, social, familial, or public reputation, employment, or ability to become employed, professional licenses, credit rating, or financial condition, (the 'Prohibited Publications'), and further agrees to use her best efforts to immediately remove or have removed any such Prohibited Publications that she has previously published or posted. Nothing in the for[e]going is intended to prohibit [Mother] from publishing, whether in writing or electronic form, in any of the above media, information outside of the scope of the Prohibited Publications, including, without limitation, related to her role as a board member of, and, advocate for Break the Silence Against Domestic Violence."

On May 9, 2019, Father filed a request for order against Mother seeking section 271 sanctions against her for repeated violations of court

orders. He alleged that Mother had defamed him on her social media and disparaged him to the children in communicating with them, which actions violated the January 8, 2016 order. Also on May 9, 2019, Father filed a request for order to change the amount of his child support based on the reduction in his income and impending job loss.

On June 19, Father filed an ex parte application for an order to modify the prior custody order and instead award him sole legal and physical custody of the children. He alleged that Mother "continues to engage in conduct that presents an immediate and present risk of psychological harm to the parties['] children by disparaging [Father] to the children and undermining his relationship with them. [Mother] has shown no present ability to understand the seriousness of her actions." The court granted Father's ex parte application, finding there was an emergency to change the prior custody order.

On June 20, Father filed a request for order to change the prior custody order. In support of his request, Father attached his declaration that he submitted in support of his June 19 ex parte application and certain e-mails and text messages sent by Mother to him or the children. On June 20, the court issued a temporary order awarding Father sole physical custody of the children and allowing Mother supervised visitation, pending the scheduled hearing on his request for order.

On July 31, the court issued a findings and order after hearing on Father's request to modify his child support and reduced his child support obligation to zero. Also on July 31, the court issued an order appointing Linda M. Altes, Ph.D., as a private child custody evaluator to perform a child custody evaluation pursuant to Evidence Code section 730 regarding Father's request for order modifying child custody.

5

On October 18, Father filed an ex parte application for an order suspending Mother's visitation rights until a hearing, alleging that their oldest son had been taken into custody at his school and placed in a Welfare and Institutions Code section 5150 hold because of Mother's false accusations to child welfare services that their son had easy access to guns at Father's home and was suicidal. In support of his application, Father submitted his declaration describing the incident regarding their son. Finding an emergency, the court issued an order suspending Mother's visits with the children pending a hearing. On October 30, the court issued a temporary emergency order granting temporary physical custody to Father and allowing Mother supervised visitation.

On January 27, 2020, Father filed a request for order, seeking, inter alia, orders that the children not be permitted to use electronic devices purchased by Mother, that Mother have no contact with Father's nanny for the children, and section 271 sanctions against Mother for her repeated violations of court orders. In support of his request, Father lodged various exhibits, including certain social media posts and texts by Mother. The court issued a temporary emergency order for the immediate removal of the electronic devices purchased by Mother for the children.

On May 1, Father filed a request for a domestic violence restraining order (Form DV-100), requesting a restraining order protecting the children and him from Mother, except for limited supervised calls and screened letters between the children and her. Father alleged that he and the children had suffered severe emotional distress and psychological trauma as a result of Mother's abusive conduct, which conduct he described. In support of his request, he lodged certain exhibits showing Mother's conduct. On May 1, the

court issued a temporary restraining order protecting Father and the children against Mother.

On July 22, following an evidentiary hearing, the court issued a domestic violence restraining order (DVRO) protecting Father and the children from Mother for a period of five years. In its minute order, the court ordered that Father have legal and sole physical custody of the children and that a section 3044 presumption would apply to Mother. The DVRO attached section 3044's provisions.

On August 21, the court issued a second DVRO, which protected Father and the children against Mother for a five-year period and also ordered that Father have sole legal and physical custody of the children with Mother to have supervised visitation.

The court conducted an evidentiary hearing over 19 days (from July 2020 through February 2021) on Father's request for orders regarding custody and section 271 sanctions and other contested issues. Father requested that the court issue a statement of decision. On April 30, 2021, the court issued its proposed statement of decision (PSOD). On June 14, Father filed his objections to the PSOD.

On June 24, 2021, the court issued its 137-page final statement of decision (FSOD). The FSOD included an extensive discussion of the evidence and made detailed findings of fact. In particular, the court found that Mother was not credible, citing instances where she was untruthful. Based on its consideration of the evidence, the court observed: "[Mother] hates [Father] more than she loves her children." It found that Mother "refuses to stop doing the behaviors which are harming the children. [She] violates almost every order the court makes, refuses to abide by the [DVRO], . . . continued to contact the children in violation of the order, delivers things to the children in

7

violation of the order, continues to post derogatory, denigrating and disparaging things about [Father] [online] and sharing them with the children, violating the stipulation which was so carefully crafted to stop this behavior." The court found that because it had issued the DVRO, there was a section 3044 rebuttable presumption which Mother had not overcome. Based on the evidence and its findings, the court ordered that Father have sole legal and physical custody of the children. The court further ordered that Mother and her sister have no contact with the children. The court also awarded Father $25,000 in section 271 sanctions against Mother. In so doing, the court stated: "This case deserves sanctions more than any other case this court has dealt with or any case that this court has read dealing with sanctions."

On August 11, the court issued a findings and order after hearing (FOAH), incorporating its FSOD and restating the orders set forth therein. On August 12, the court clerk served the parties with a notice of entry of the FOAH issued on August 11. On August 20, Mother filed a notice of appeal challenging the FSOD issued on June 24, 2021.[2]

On March 25, 2022, Mother filed a renewed motion to augment the record on appeal, attaching documents separated into a confidential binder (binder #1) and a nonconfidential binder (binder #2). Also on March 25, Mother submitted a renewed notice of intent to lodge documents and notice of lodgment of exhibits. On April 27, we issued an order stating that we would

---

[2]    To the extent the FSOD may not constitute an appealable final judicial decision because it requested that Father's counsel prepare the FOAH and submit it to the court for its signature, we construe Mother's notice of appeal to be from the subsequent FOAH, issued on August 11, 2021, which incorporated the FSOD. (Cal. Rules of Court, rule 8.104(b); *Vitkievicz v. Valverde* (2012) 202 Cal.App.4th 1306, 1310, fn. 2.)

consider Mother's renewed motion to augment and renewed notice of lodgment concurrently with the appeal. We now grant her renewed motion to augment the record on appeal and, in so doing, order that the documents set forth in binder #1 remain confidential and not available to the public. We also accept her renewed notice of lodgment and consider the exhibits and other documents so lodged in our disposition of this appeal.

DISCUSSION

I

*Mother's Challenge to the DVROs*

Mother initially contends that the trial court erred by issuing the permanent domestic violence restraining orders, presumably referring to the DVROs issued on July 22, 2020 and August 21, 2020. In challenging the DVROs, Mother argues that the court was biased, there was insufficient evidence to support its underlying findings, and the DVROs violated her right to free speech under the First Amendment to the United States Constitution, her right to a fair trial under the Sixth Amendment to the United States Constitution, and her fundamental right to oversee the care, custody, and control of the children under the 14th Amendment to the United States Constitution.

However, as Father argues, Mother did not timely appeal the DVROs and therefore cannot now challenge them in this appeal. Code of Civil Procedure section 904.1, subdivision (a)(6) provides that an appeal lies from an order granting an injunction. (See, e.g., *R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 187 [civil harassment restraining order is appealable]; *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 357 [temporary restraining order is appealable]; *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208 [same].) Because the DVROs were clearly orders granting injunctions,

9

Mother had a right to appeal from those DVROs pursuant to Code of Civil Procedure section 904.1, subdivision (a)(6).

Mother did not timely appeal the DVROs within the required time period. California Rules of Court, rule 8.104(a)(1)[3] provides that a notice of appeal generally must be filed within the earliest of 60 days of service of a notice of entry or filed-endorsed copy of the judgment or, if none, 180 days after entry of the judgment. Accordingly, to challenge the DVROs, Mother was required to file a notice of appeal challenging them no later than 180 days after their issuance (e.g., on or before February 17, 2021, which was 180 days after issuance of the DVRO issued on August 21, 2020). The trial court's register of actions shows, and Mother does not dispute, that she did not file a notice of appeal challenging either DVRO within that 180-day period.

If an appealable judgment or order is not timely appealed, we lack jurisdiction to consider any challenge to it and must dismiss any appeal of it. (Code Civ. Proc., § 906; rule 8.104(b); *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696; *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 864.) "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8; see also *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 967 ["If the ruling *is* appealable, the aggrieved party *must* appeal or the right to contest it is lost"].) Under that rule, we have no discretion to entertain appellate review of an appealable judgment or order from which a timely appeal was not taken. (Code Civ. Proc., § 906; *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 67-68; *Pfeifer v. John Crane, Inc.* (2013) 220 Cal.App.4th 1270, 1315-1316; *In re Marriage of Lloyd* (1997) 55 Cal.App.4th 216, 219 ["If a party fails to appeal

---

3       All references to rules are to the California Rules of Court.

10

an appealable order within the prescribed time limit, this court is without jurisdiction to review that order on a subsequent appeal"].) Applying the one-shot rule to this case, we conclude that Mother has forfeited any challenge to the DVROs by not timely appealing them. Because we lack jurisdiction to consider her challenge to the DVROs in her appeal of the FSOD issued on June 24, 2021, we need not, and do not, address the merits of her specific arguments in challenging the DVROs.

## II

*Finding of Changed Circumstances for Modification of Prior Custody Order*

Mother contends that the trial court erred by modifying the prior custody order without first finding that the circumstances had significantly changed since that order.

## A

Mother correctly notes that for a trial court to modify a prior final custody order, it must find that the party seeking a modification has shown both: (1) a significant change in circumstances since the prior custody order; and (2) the proposed custody order is in the child's best interest. (See, e.g., *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 256 (*Montenegro*); *In re Marriage of Burgess* (1996) 13 Cal.4th 25, 37; *Burchard v. Garay* (1986) 42 Cal.3d 531, 534.) "Under the so-called changed circumstance rule, a party seeking to modify a permanent custody order can do so only if he or she demonstrates a significant change of circumstances justifying a modification." (*Montenegro*, at p. 256.) Alternatively stated, "once it has been established [under a prior judicial custody decision] that a particular custodial arrangement is in the best interests of the child, the court need not reexamine that question. Instead, it should preserve the established mode of custody unless some

11

significant change in circumstances indicates that a different arrangement would be in the child's best interest." (*Burchard*, at p. 535.)

In *Montenegro*, the court held that "a stipulated custody order is a final judicial custody determination for purposes of the changed circumstance rule only if there is a clear, affirmative indication the parties intended such a result." (*Montenegro, supra*, 26 Cal.4th at p. 258.) As discussed above, the record in this case shows that on January 8, 2016, the trial court entered a judgment on reserved issues, including custody of the children, based on the parties' stipulation. That judgment ordered that the parties have joint legal and physical custody of the children and share time with the children pursuant to the schedule set forth in their stipulation. Importantly, the parties expressly stipulated that this was "intended to constitute a final judicial custody determination pursuant to *Montenegro*" and that a party seeking to modify them "shall be required to demonstrate a significant change of circumstances justifying such a modification."

Mother argues, and Father does not appear to dispute, that the 2016 stipulation and judgment satisfied *Montenegro*'s requirement for stipulated orders to constitute final judicial custody determinations for purposes of the changed circumstance rule. We agree. Based on the express language in the parties' stipulation, which included a citation to *Montenegro*, we conclude their stipulation constituted "a clear, affirmative indication the parties intended" that their stipulation regarding custody of their children constitute a final judicial custody determination within the meaning of *Montenegro* and therefore any modification of that determination would require a showing of a significant change of circumstances. (*Montenegro, supra*, 26 Cal.4th at p. 258.)

12

B

Our review of the FSOD shows, as Mother asserts, that the trial court did not make an *express* finding on the question of whether Father had met his burden to show there had been a change of circumstances since the prior 2016 custody order. However, as Father asserts, we conclude that the trial court made an *implied* finding on the question of changed circumstances. The record shows that Father requested that the court issue a statement of decision. The court issued the PSOD and Father filed his objections thereto. The record further shows that Mother also had an opportunity to review and object to the PSOD. On May 27, 2021, the court granted Mother's ex parte request to extend the time to file objections to the PSOD until June 14 and ordered that the PSOD be available at the court clerk's office by May 28 for Mother to pick up. Despite the availability of the PSOD to Mother and her presumed review of it, she did not file any objections to the PSOD and, in particular, did not object to its omission of an express finding on the question of whether Father had shown a significant change of circumstances since the prior 2016 custody order.

On appeal, we must presume the order being challenged is correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) We further presume that the trial court followed applicable law. (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 563.) Unless express findings are required, "we presume the court followed the law in making its determination [citation], including a consideration of the criteria set forth in [an applicable rule]." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 698-699.) Here, Mother does not cite, nor are we aware of, any case requiring that a trial court make an express finding on the question of changed circumstances for modification of a prior custody order. Therefore, we presume the trial

13

court here made an implied finding that Father showed there had been a significant change of circumstances since the 2016 custody order.

Furthermore, because Mother did not request that the court include in its statement of decision an express finding on the question of changed circumstances, we presume that the court made such a finding based on the evidence before it. (*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1070, fn. 19 [absent contrary findings, " 'we must presume in favor of the judgment every finding of fact necessary to support it [that is] warranted by the evidence' "].) "Ordinarily, when the court's statement of decision is ambiguous or omits material factual findings, a reviewing court is required to infer any factual findings necessary to support the judgment. [Citations.] . . . [¶] In order to avoid the application of this doctrine of implied findings, an appellant must take two steps: First, the appellant must request a statement of decision pursuant to Code of Civil Procedure section 632 . . . ; second, if the trial court issues a statement of decision, 'a party claiming omissions or ambiguities in the factual findings must bring the omissions or ambiguities to the trial court's attention' pursuant to [Code of Civil Procedure] section 634. [Citation.]" (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494; see also *In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 346 [appellant forfeited right to complain on appeal about omission in statement of decision of finding on specific factual issue because he did not specifically object below]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133-1134 ["[I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement [of decision] was deficient in these regards, and hence the appellate court will imply findings to support the judgment"].)

Here, the record shows that Mother did not request a statement of decision, make any proposals as to the content of the requested statement of decision, and did not bring the omission of a finding regarding changed circumstances to the trial court's attention before issuance of the FSOD or thereafter in a motion for new trial or motion to vacate the judgment. Accordingly, we conclude that the doctrine of implied findings applies in the circumstances of this case and, based thereon, conclude that the trial court impliedly found that Father showed there had been a significant change of circumstances since the 2016 custody order.

III

*Substantial Evidence to Support Finding of Changed Circumstances*

Mother contends that substantial evidence does not support an implied finding by the trial court that there had been a significant change of circumstances since the prior 2016 custody order. However, she cites only evidence and inferences favorable to her position (e.g., arguing that her conduct was the same before and after the prior custody order and therefore had not changed) and, in so doing, misconstrues and/or misapplies the applicable substantial evidence standard of review. When an appellant's opening brief states only evidence favorable to the appellant's position and ignores evidence supporting the judgment or finding, we may treat the substantial evidence contention as waived and presume the record contains evidence to support the trial court's factual findings. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072 (*Delta*); *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 (*Doe*).)

In any event, our review of the record shows that substantial evidence supports the court's implied finding that there had been a significant change

15

of circumstances since the prior 2016 custody order. Given the voluminous trial record that includes extensive percipient and expert testimony and supporting exhibits, we need to cite only some of that evidence to satisfy the substantial evidence standard of review. As discussed above, the 2016 stipulation and judgment ordered that the parties have joint legal and physical custody of the children and furthermore that "neither party shall make derogatory comments . . . about the other party in the presence of the minor children." At the 19-day evidentiary hearing on Father's request for an order changing custody, extensive evidence was admitted showing Mother had sent text messages and made social media posts that disparaged Father after the 2016 custody order. In the FOAH, which attached and incorporated the FSOD, the court listed the 81 exhibits that it had admitted in evidence and stated that it had reviewed those exhibits, along with the pleadings and trial testimony, in making its findings and orders.

In particular, the court admitted in evidence, and considered, Father's declarations and exhibits submitted in support of his prior requests for orders. In support of his request for order filed on May 9, 2019, Father attached an exhibit (Exh. 549) consisting of Mother's text messages to the children implying that he was a bad parent and stating that he " 'keeps forgetting' " to transfer funds into one child's school lunch account (despite Mother's responsibility, according to Father, to promptly fund that account which she controlled). The court also cited Mother's text message to the children (Exh. 549) regarding Father's tradition of taking them to a Denny's restaurant for breakfast before school, stating: " 'Enjoy your 736th Denny's breakfast,' " and then adding a vomit emoji. Exhibit 549 also included text messages from Mother to the children in which she stated: "I'm sorry that dad couldn't make it again, I wish that he could remember your guys' things

16

the way he remembers the gym, you deserve better" and "when you're home dad never texts or calls or checks on you guys to let you know that he loves and misses you so probably when he takes your iPads he's only trying to hurt me by preventing you from communicating with you, and even though it hurts you guys too, he isn't trying to, he just doesn't care" and "the problem is him and not you or me" and "I do not know what is wrong with him."

In support of his request for order filed on June 19, 2019, Father attached an exhibit (Exh. 559), which set forth Mother's text messages to the children regarding his time at the gym, stating: "[Father's] been there for about 4 hours now. . . . Let me know when [he] gets home from the gym ok, so I don't have to worry about it anymore. . . . [¶] How long was your dad at the gym yesterday? So far today it has been 2 ½ hours. . . . [¶] 3 hours and he's not home? That sucks for you guys, I'm sorry. . . . [¶] Good lord, dad is spending 4 ½ hours at the gym with you guys home alone? . . . [¶] That sucks bruh. For real[.]" Father's supporting declaration (Exh. 556) stated that Mother had not only exaggerated his time at the gym, but also disregarded the fact that the children had been in the care of his 22-year-old daughter during that time.

The court also admitted in evidence, and considered, Father's declaration in support of his ex parte application filed on October 18, 2019 (Exh. 570), in which he described an incident one week earlier during which their oldest son was forcibly removed from school and involuntarily placed in a Welfare and Institutions Code section 5150 hold for 72 hours for risk of harm to himself or others, which hold resulted, in part, from Mother's false allegations that the child had access to Father's guns at his home. Father declared that Mother and her attorney confirmed that Mother had "called CWS and reported the false school threat and about the guns being easily

17

accessible to our children at my house" and that their "son was severely traumatized as were his siblings" by the incident.

In the FSOD, the court cited other exhibits, such as Mother's text message to an unidentified recipient, which she shared with the children (Exh. 613), stating in part: " 'I'm reaching out to you now because my 3 children are being withheld any contact with me by my abuse (sic) ex-husband . . . and I am hopeful that you can help to shed light on this horrible abuse of parental rights.' " It also cited Mother's group text message (Exh. 613) in which she referred to Father as a " 'psychopath' " and "a literal waste of oxygen that people literally don't give a shit about . . . ."

We conclude that the evidence described above, along with other extensive evidence admitted and considered by the court, provided substantial evidence to support the court's implied finding that there had been a significant change of circumstances since the prior 2016 custody order. In particular, based on the evidence, as well as its issuance of the two DVROs against Mother in 2020, the trial court could reasonably have found that her misconduct had continued, and even escalated, since the 2016 custody order. Accordingly, Mother has not carried her burden on appeal to show substantial evidence does not support the court's implied finding that Father had met his burden to prove the first part of the two-part test for modification of a prior custody order (i.e., there had been a significant change of circumstances). (*Montenegro, supra*, 26 Cal.4th at p. 256.)

IV

*Substantial Evidence to Support Finding That Mother*
*Had Not Rebutted Section 3044 Presumption That*
*Father's Custody of the Children Would Be in Their Best Interest*

Mother also contends that substantial evidence does not support a finding by the trial court that Father's requested modified custody order

18

placing the children in his sole legal and physical custody would be in their best interest.  However, in so arguing, she misconstrues and/or misapplies the relevant legal principles.

## A

In the FSOD, the trial court stated that because it had issued the prior DVROs, there was a section 3044 rebuttable presumption which Mother had not overcome.  Based on the evidence and its findings, the court ordered that Father have sole legal and physical custody of the children.

## B

Section 3044 sets forth the rebuttable presumption cited by the court and provides in part:

> "(a)  Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child, or against the child or the child's siblings, . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020.  This presumption may only be rebutted by a preponderance of the evidence.
>
> "(b)  To overcome the presumption set forth in subdivision (a), the court shall find that paragraph (1) is satisfied and shall find that the factors in paragraph (2), on balance, support the legislative findings in Section 3020.
>
> "(1)  The perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child pursuant to Section 3011 or 3020.  In determining the best interest of the child, the preference for frequent and continuing contact with both parents, as set forth in subdivision (b) of Section 3020, or with the noncustodial parent, as set forth in paragraph (1) of subdivision (a) of

19

Section 3040, may not be used to rebut the presumption, in whole or in part.

"(2) Additional factors: [¶] . . . [¶]

"(E) The perpetrator is restrained by a protective order or restraining order, and has or has not complied with its terms and conditions.

"(F) The perpetrator of domestic violence has committed further acts of domestic violence. [¶] . . . [¶]

"(g) In an evidentiary hearing or trial in which custody orders are sought and where there has been an allegation of domestic violence, the court shall make a determination as to whether this section applies prior to issuing a custody order . . . ."

In *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487 (*Fajota*), we stated: "The clear terms of section 3044 require that a court apply a presumption that it is detrimental to the best interest of the child to award joint or sole physical or legal custody to a parent if the court has found that that parent has perpetrated any act of domestic violence against the other parent in the preceding five years. The presumption is rebuttable, but the court *must* apply the presumption in any situation in which a finding of domestic violence has been made." (*Id.* at p. 1498.) Section 3044's rebuttable presumption applies whenever a trial court makes custody orders pursuant to the best interests of the child standard, including decisions on requests for orders modifying a prior custody order. (See, e.g., *Ellis v. Lyons* (2016) 2 Cal.App.5th 404, 416-418 (*Ellis*) [§ 3044 rebuttable presumption applied to trial court's decision on request to modify prior custody order where domestic violence restraining order had been issued within five years of hearing]; *Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 735-737 (*Christina*

20

*L.*) [same].)  "Because a DVPA [Domestic Violence Prevention Act] restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse, a finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1267 (*S.M.*).)  The section 3044 presumption "changes the burden of persuasion, but 'may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent.' [Citations.]"  (*Christina L.*, at p. 736.)

C

In arguing there is insufficient evidence to support the trial court's finding regarding the children's best interest, Mother's opening brief omits any discussion of section 3044 or its effect on the trial court's finding regarding the children's best interest and, in addition, cites only evidence and inferences favorable to her position.  By so doing, she has waived her argument and, in any event, has not carried her burden on appeal to show that substantial evidence does not support the court's finding.

Here, the trial court issued two DVROs in 2020 that restrained Mother against Father and the children based on its findings that she had committed acts of domestic violence.  Because those DVROs were issued within five years of the court's June 24, 2021 decision on Father's request for an order modifying the prior custody order, the court was required to apply section 3044's rebuttable presumption in determining the children's best interest. (*Fajota, supra*, 230 Cal.App.4th at p. 1498; *Ellis, supra*, 2 Cal.App.5th at pp. 416-418; *Christina L., supra*, 229 Cal.App.4th at pp. 735-737; *S.M., supra*, 184 Cal.App.4th at p. 1267.)  To overcome the section 3044 presumption, Mother had the burden to persuade the court with a preponderance of

21

evidence showing that the children's best interest would be sole or joint legal and/or physical custody with her, rather than sole legal and physical custody with Father.

However, the court found that Mother was not credible and that she "refuses to stop doing the behaviors which are harming the children. [She] violates almost every order the court makes, refuses to abide by the [DVRO], . . . continued to contact the children in violation of the order, delivers things to the children in violation of the order, continues to post derogatory, denigrating and disparaging things about [Father] [online] and sharing them with the children, violating the stipulation which was so carefully crafted to stop this behavior." By so finding, the court implicitly, if not expressly, found that Mother was restrained by the DVROs issued against her and that she had committed further acts of domestic violence since the issuance of the DVROs. (§ 3044, subd. (b)(2)(E) & (F).) The court also implicitly found that Mother had not carried her burden to persuade it that it would be in the children's best interest for Mother to have sole or joint physical or legal custody of them and stated that the section 3044 "has not been overcome as [Mother] continues to violate the order." (§ 3044, subd. (b)(1).) Based on our review of the record, we conclude the court properly applied the section 3044 presumption in finding that Mother did not carry her burden to rebut it.

To the extent Mother argues in her opening brief that the court erred by finding that she did not rebut that presumption, she does so by merely citing evidence and inferences favorable to her and by arguing, in a conclusory manner, that the court should have considered certain reports and testimony of professionals that have been lodged with us or included in the augmented record. However, by so arguing, she has waived her contention.

22

(*Delta, supra*, 48 Cal.App.5th at p. 1072; *Doe, supra*, 177 Cal.App.4th at p. 218.)

V

*Admission of Expert Testimony*

Mother contends that the trial court erred by admitting certain testimony of expert witnesses. In particular, she argues the court abused its discretion by allowing Dr. Steven Miller to testify on his diagnosis regarding her mental health.

We conclude that Mother has waived or forfeited any challenge to Dr. Miller's testimony by not citing to specific pages from the reporter's transcript showing that she objected below to that challenged testimony and, in addition, by not citing to specific pages from the reporter's transcript showing that Dr. Miller did, in fact, so testify. In support of her contention, she simply argues in a conclusory manner, and without citations to the record showing her purported objections, that "[t]he court continually disregarded or overruled a number of objections that I lodged and further repeatedly prevented me from interrupting [Dr. Miller's] testimony no matter how long that he misused the court[']s time." In her sole citation to the record purporting to show she objected to Dr. Miller's expert testimony, Mother, in fact, agreed with Father's counsel that Dr. Miller was qualified to testify as an expert witness in the areas of behavioral medicine, child alignment, parental alienation, estrangement, enmeshment, maltreatment, and their effects on children. In so doing, Mother added the caveat that Dr. Miller was not qualified to testify specifically regarding her because she had never spoken with him and did not know what information he had. The court clarified that she was agreeing that Dr. Miller would be testifying in those areas of his expertise and not on her case. The court then ruled that

23

Dr. Miller was "qualified to testify subject to objections about his testimony, foundation and those types of things."

Despite that initial limitation regarding Dr. Miller's expert testimony, Mother does not cite to any page in the reporter's transcript showing she thereafter made any specific objection to Dr. Miller's expert testimony on the ground that it purported to convey his diagnosis regarding her mental health or was otherwise beyond the scope of his expertise.[4]

If an appellant does not timely make an objection below to testimony on the specific ground challenged on appeal, the appellant waives or forfeits any challenge on appeal to the admission of that testimony on that ground. (Evid. Code, § 353; *People v. Waidla* (2000) 22 Cal.4th 690, 717 [challenge to admission of evidence will not be reviewed on appeal in absence of specific and timely objection in trial court]; *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549, 563-564 [appellant forfeited challenge on appeal to admission of testimony by not timely and specifically objecting in trial court].) By not citing to any page in the reporter's transcript or otherwise showing that she timely and specifically objected to certain testimony by Dr. Miller, we conclude that Mother has

---

4        Instead of citing to the record showing that *she* objected to certain testimony by Dr. Miller, Mother cites only to the *court's* own statement during Dr. Miller's testimony in which it asked Father's counsel "to move on to something new, please." The court then added that it would not be questioning Dr. Miller because his testimony had "just gone on too long. We're going to finish with this doctor today. [¶] . . . [¶] Otherwise, I'm getting close to a mistrial here. So let's move it. I think I have your picture from your side, [Father's counsel's name]. I really think I've got it. I do." By so admonishing Father's counsel, the court appeared to convey that it had heard ample expert testimony by Dr. Miller and did not need any more testimony from him and, in so doing, did *not*, as Mother now asserts, imply that Dr. Miller had testified beyond the scope of his expertise.

waived or forfeited any challenge on appeal to that purported inadmissible testimony. Accordingly, we need not, and do not, address the merits of her challenge to Dr. Miller's testimony.

Also, Mother has not made any attempt to show that the admission of Dr. Miller's purported testimony regarding her mental health was prejudicial (i.e., that it is reasonably probable she would have obtained a more favorable result at trial had that testimony been excluded). By not showing that purported inadmissible testimony was prejudicial, Mother has failed to show the instant order must be reversed on that basis. (Cal. Const., art. VI, § 13 [reversal of judgment only if trial court error resulted in miscarriage of justice]; Code Civ. Proc., § 475; Evid. Code, §§ 353, 354; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) [miscarriage of justice due to state law error is shown where it is reasonably probable appellant would have obtained more favorable result in absence of such error]; *People v. Gonzales* ( 2018) 5 Cal.5th 186, 195 (*Gonzales*) [appellant has burden on appeal to show prejudice due to error]; cf. *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 282 [appellant failed to show how error in excluding evidence would have made any difference in result at trial].)

VI

*Trial Court's Statement of Decision*

Mother contends that the trial court erred by allowing Father to draft and submit the PSOD to the court without serving her with a copy and then issuing the FSOD without allowing her to review and object to the PSOD.[5]

---

5     In conjunction with this contention, Mother also argues in a conclusory manner that the trial court erred by signing the DVRO in July 2020. However, as we concluded above, she cannot challenge that order now because she did not timely appeal it.

However, she does not cite to the record to support her assertions and merely speculates that the court so acted.

A

On February 19, 2021, Father requested that the trial court issue a statement of decision pursuant to Code of Civil Procedure section 632 and, in so doing, address certain controverted issues specified in his request. Father served a copy of his request on Mother. The record does not show that Mother thereafter requested that the court address any other specific controverted issues in its statement of decision. On April 30, the court issued the PSOD, which ordered that the court clerk immediately serve it on all parties. The record on appeal includes the court clerk's proof of service showing that copies of the PSOD were served on Mother and Father's counsel at their respective San Diego mailing addresses.

On May 26, Mother filed an ex parte application for an order extending the time for filing objections to the PSOD and requesting clarification regarding who had written the PSOD. On May 27, the court granted the requested relief, stating: "Statement of Decision to be at the clerk[']s office by 5/28/21 for [Mother] to pick up and all objections due 6/14/21 per [rule] 3.1590(g)."

On June 9, the court conducted a hearing (at which both parties appeared remotely by video or telephone) to address certain pending motions, including Father's request for section 271 sanctions against Mother and various pending requests for orders filed by Mother. During that hearing, Father's counsel represented that, per Mother's request, she sent Mother a copy of the PSOD. Father's counsel represented to the court that Mother thereafter sent her e-mails accusing Father and/or her of drafting the PSOD

26

instead of the court. After hearing the parties' arguments, the court stated that it would thereafter issue a written ruling on the pending motions.

On June 14, Father filed his objections to the PSOD. The record does not show that Mother filed any objections to the PSOD. On June 24, 2021, the court issued its 137-page FSOD. Also on June 24, the court clerk filed a certificate of service representing that it had sent copies of the FSOD to Mother and Father's counsel at their respective e-mail addresses. In the FSOD, the court addressed, inter alia, the questions raised by Mother regarding receipt of the PSOD and its author, stating:

> "The court issued [the PSOD] which was served on both parties by mail to the addresses on file with the court. [Mother] subsequently claimed that she had not received the document as she was evicted from her apartment. An [ex parte] hearing was held, the court ordered [Mother] to come to the clerk's office to pick up a copy of the decision and the time for objections was extended to June 15, 2021. At that hearing, [Mother] was adamant that [Father] drafted the [PSOD]. *The court attempted to reassure her that the entire decision was written solely by the court.* There are numerous communications between [Mother] and [Father's counsel] stating [Mother's] emphatic [belief] that the court did not write the decision. The court has considered these documents as objections to the [PSOD].

> "[Father's] objections were received by the court on June 14, 2021. The court did not receive any document entitled objections by [Mother]. However[,] the court received a Notice of Intent to Lodge Documents which was received by the court on June 7, 2021 and the court is going to treat that document as [Mother's] objections. The court has considered all of the objections by [Father] and the information submitted by [Mother]. The court has modified the [PSOD] accordingly. All objections have been considered and ruled upon." (Italics added.)

27

The FSOD requested that Father's counsel prepare the FOAH and submit it to the court for its signature.

On August 11, the court issued the FOAH, which attached and incorporated the FSOD. The FOAH, inter alia, restated the court's orders set forth in the FSOD.

B

Mother asserts that the trial court erred by issuing the PSOD on April 30, 2021, because (1) it was written by Father and (2) it was not properly served on her. However, she does not cite to any specific page in the record that supports her assertion and simply *speculates* that Father, rather than the court, drafted the PSOD. Furthermore, our review of the record does not support her assertions. As discussed above and as stated by the court in the FSOD, the PSOD was issued on April 30, 2021, and then mailed to the parties at their addresses of record at that time. On May 26, Mother filed an ex parte application, asserting that she had not received a copy of the PSOD because she had recently been evicted from the residence to which it had been mailed. At the May 27 hearing on her application, Mother asserted that Father, and not the court, had drafted the PSOD. At that hearing, as the court stated in the FSOD, "[t]he court attempted to reassure [Mother] that the entire [PSOD] was written solely by the court." At the conclusion of the hearing, the court ordered the court clerk to have a copy of the PSOD available for Mother to pick up and then extended the time for the parties' objections to the PSOD until June 14, 2021. Nevertheless, Mother did not file any objections to the PSOD (although on June 7, as the court noted in the FSOD, she lodged certain documents with the court).

Based on our review of the record, we conclude that, contrary to Mother's assertion, the trial court, and not Father, drafted the PSOD and the

FSOD.  Accordingly, neither the trial court nor Father had a duty to serve the PSOD on her for her approval by signature.  (Cf. rule 5.125(b) & (c) [where one party prepares proposed order after hearing per court's order, that party must serve proposed order on other party for either approval by signature or objections].)  Mother does not cite any statute or rule requiring the court to obtain her approval before issuing the PSOD or FSOD.  Likewise, the record shows that the PSOD was made available to her and she had an opportunity to object to it before the court issued the FSOD.

C

Mother also asserts that Father drafted the FOAH and failed to obtain her signature on it before submitting it to the court.  Our review of the record shows that the court in the FSOD ordered Father's counsel to prepare the FOAH and submit it to the court for its signature.  On August 11, 2021, the court issued the FOAH, which was presumably prepared by Father's counsel.  The FOAH attached and incorporated the FSOD and restated the court's orders set forth in the FSOD.  Mother correctly argues that because Father's counsel prepared the proposed FOAH per the trial court's order, Father was required by court rule to serve the proposed order on her for her approval by signature or objection.  (See rule 5.125(b) & (c).)  The record on appeal does not show that Father's counsel complied with that court rule before submitting the proposed FOAH to the court.  Nevertheless, assuming arguendo that Father's counsel did not comply with that rule and the court erred by issuing the FOAH without first requiring such compliance, we conclude Mother has not carried her burden on appeal to show that she suffered any prejudice from that purported error.  In particular, she has not shown that it is reasonably probable that she would have obtained a more favorable order or other result after trial if Father had complied with that

29

rule.  (Cal. Const., art. VI, § 13; *Watson, supra*, 46 Cal.2d at p. 836; *Gonzales, supra*, 5 Cal.5th at p. 195.)

Also, contrary to Mother's assertion, the record shows that the trial court complied with rule 5.125(f), which requires a trial court to first compare an unapproved proposed order after hearing "to the minute order; official transcript, if available; or other court record" before signing the order.  (Rule 5.125(f).)  Here, the FOAH issued by the court attached and incorporated the FSOD in which the court stated that it had reviewed all the pleadings, exhibits, testimony, and arguments.  Construing that incorporated statement broadly while presuming the court acted in accordance with the law, we conclude the court complied with rule 5.125(f) before issuing the FOAH.  In any event, Mother again has not carried her burden on appeal to show that she suffered any prejudice from that purported error.  (Cal. Const., art. VI, § 13; *Watson, supra*, 46 Cal.2d at p. 836; *Gonzales, supra*, 5 Cal.5th at p. 195.)  Accordingly, we conclude that Mother has failed to show there is any ground to reverse the FOAH.

## VII

### *Denial of Mother's Requests for Attorney Fees and Her Other Contentions*

Mother contends that the trial court erred by denying her requests for attorney fees, relieving her counsel and the children's counsel before trial, not holding a trial readiness conference, and allowing Father's counsel to continue to represent Father even though the children's former counsel worked for Father's counsel during trial.

### A

Mother contends that the court erred by denying her requests for awards of attorney fees.  However, in so doing, she argues in a conclusory manner and without any supporting substantive legal analysis.  Accordingly,

30

we conclude that she has waived or forfeited that contention and therefore we need not address its merits. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 (*Niko*); *Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948 (*Ewald*); *People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*); *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 (*Salas*).)

Assuming arguendo that Mother has not waived or forfeited her contention, we nevertheless conclude she has not carried her burden on appeal to show the court abused its discretion by denying her attorney fee requests. On January 24, 2020, Mother filed an ex parte application requesting, inter alia, an award of $100,000 for attorney fees. She apparently did not attach a current income and expense declaration to her application. On January 27, the court issued an order finding that her application was not an emergency and setting a hearing on the request for February 25. At the February 25 hearing, the court addressed other issues, but apparently did not address Mother's attorney fee request and retained jurisdiction over that and all other outstanding issues.

On January 26, 2021, Mother filed another ex parte application requesting, inter alia, an award of $100,000 for attorney fees. In support of her request, Mother declared: "I have less than $5,000 remaining to my name and have completely exhausted $288,000 in funds I received as a division of the liquid assets received earlier last year as a result of our marital dissolution." However, she apparently did not attach a current income and expense declaration to her application. On January 26, the court issued an order setting a hearing on the request for February 10. On January 28, Mother, in propria persona, filed an additional declaration in support of her ex parte application, stating in part: "I am asking the court to level the playing fields and issue an order for attorney fees so that I can hire

an attorney and an expert witness to continue to refute [Father's] constant court filings . . . ." She further stated: "The evidentiary hearings concluded more than 3 months ago and closing arguments have been postponed several times, and are still pending." She also stated: "I do not have any money . . . ." At a February 11 hearing, the parties agreed that they would submit their arguments regarding attorney fees in writing to the court.

On February 19, Father submitted his closing argument brief on financial issues, including his opposition to Mother's request for an award of attorney fees. He argued that the court should exercise its discretion under sections 2030 and 2032 and deny her request for attorney fees. In particular, he argued that Mother had not filed a current income and expense declaration, which was required for an attorney fee request. He further argued that because Mother had received $1,300,000 in spousal support and a total of more than $3,000,000 in support and assets during the course of their dissolution proceedings, she had not shown a financial need for an attorney fee award. He further argued that considering the parties' respective expenses, Mother had more disposable income from which to pay her attorney than he had.

On May 3, Mother belatedly filed an income and expense declaration, stating that she had no income, no assets, and expenses of $16,550 per month.

On June 9, the court heard arguments on Mother's request for attorney fees. In the FSOD, the court denied Mother's request for attorney fees, stating: "There are no further proceedings at this time and the court has considered . . . section 4320 and specifically relied on . . . section 4320[, subdivision](i)."

32

As Father notes, a trial court has discretion in deciding a motion for attorney fees in a marital dissolution proceeding and we must affirm that exercise of discretion unless no judge could reasonably make that decision. (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630.) To the extent Mother challenges the trial court's implicit denial of her January 2020 ex parte application for attorney fees, we conclude the court did not abuse its discretion by doing so. Because she did not file a current income and expense declaration together with her application, the court could reasonably deny her application solely on her failure to comply with rule 5.427(b)(1)(C). (Cf. *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575-576 (*Tydlaska*) [income and expense declaration required for any hearing on motion involving financial issues].) Furthermore, because she did not timely challenge the court's implicit denial of her January 2020 application, she cannot now challenge it in this appeal. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368 [interlocutory collateral orders are directly appealable].)

Regarding Mother's January 2021 ex parte application, we conclude that the court did not abuse its discretion by denying that attorney fee request because the court could reasonably have denied it solely on her failure to timely file a current income and expense declaration with her application as required by rule 5.427(b)(1)(C). (Cf. *Tydlaska, supra*, 114 Cal.App.4th at pp. 575-576.) Furthermore, in citing section 4320, subdivision (i) in the FSOD, the court presumably found that Mother's history of domestic violence, as shown by the DVROs and evidence admitted at trial, weighed against an award to her of attorney fees. (§ 2032, subd. (b) [in deciding whether to award attorney fees under § 2030, court must consider what is just and reasonable under relative circumstances of parties, including circumstances listed in § 4320]; § 4320, subd. (i) ["[a]ll documented

33

evidence of any history of domestic violence" between parties or perpetrated by one party against child, including evidence of issuance of protective order]; cf. *In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1107, fn. 5 ["[W]e remain unpersuaded that victims [of domestic violence] must be required to financially support those who have been convicted of harming them"].)

Also, the court here could have rationally denied Mother's request for attorney fees based on a finding that an award of fees was not reasonably necessary because her litigation of the case had been unreasonable. (Cf. *In re Marriage of Huntington* (1992) 10 Cal.App.4th 1513, 1524; *In re Marriage of Frick* (1986) 181 Cal.App.3d 997, 1022-1023 [trial court properly denied request for attorney fees where it found much of party's fees were generated due to party's lies and fabrications]; *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 576.) Here, the court found that Mother had repeatedly lied and was not credible, and, in particular, it stated: "The court does not believe that [Mother] has no income." Accordingly, the trial court could rationally have denied her request for attorney fees based on its finding that it did not believe her declaration that she had no income or assets and an implied finding that much of her litigation costs were incurred because of her lies and fabrications.

### B

Mother also argues that the trial court erred by relieving her counsel and the children's counsel before trial. At the February 25, 2020 hearing, the children's counsel requested that the court relieve her as their counsel because Mother was not willing to continue paying one-half of her fees. The court granted her request and relieved the children's counsel from her

34

representation of them. At the June 16, 2020 hearing, the court also granted the request of Mother's counsel to be relieved from his representation of her.[6]

However, Mother does not present any substantive legal analysis showing that the trial court erred by relieving either counsel or that she was prejudiced by such purported errors in relieving counsel. In particular, she has not cited any case or other authority showing that in the circumstances of this case there was no good cause for the court to relieve counsel. (Cf. § 3150, subd. (b) [private counsel appointed to represent child in custody proceeding shall continue to represent child unless relieved by court for good cause or on substitution of other counsel]; rule 5.240(f)(4) [counsel for child shall continue representing child until removed by court on its own motion or request of counsel for good cause shown].) Here, the court could reasonably have concluded that there was good cause to relieve counsel due to nonpayment of their fees or, in any event, neither Mother nor the children would suffer undue prejudice from the withdrawal of their counsel. (See, e.g., *People v. Prince* (1968) 268 Cal.App.2d 398, 406 [client's refusal to pay attorney fees constitutes good cause for attorney to withdraw from representation]; *Ramirez v. Sturdevant* (1994) 21 Cal.App.4th 904, 915 [no authority prevents attorney from withdrawing from representation when it can be accomplished without undue prejudice to client].) Accordingly, we conclude that Mother has not carried her burden on appeal to show the court abused its discretion by granting the requests of Mother's counsel and the children's counsel to be relieved from their representation and, in any event, does not show she

_____

6      As Mother notes, the court clerk erroneously date-stamped the June 16, 2020 order with the year "2019" instead of the correct year "2020." However, she does not show she suffered any prejudice due to that mistaken date of filing.

35

suffered prejudice from those purported errors. (Cal. Const., art. VI, § 13; *Watson, supra*, 46 Cal.2d at p. 836; *Gonzales, supra*, 5 Cal.5th at p. 195.)

C

Mother also makes a conclusory argument that the court erred by not holding a trial readiness conference, which was initially scheduled for May 5, 2020 and subsequently postponed per the court's COVID-19 emergency executive order. However, we conclude that she has waived or forfeited her argument, or at least not carried her burden on appeal, by failing to present any substantive legal analysis in support of her argument that the court erred by postponing and/or not holding a trial readiness conference. (*In re A.C.* (2017) 13 Cal.App.5th 661, 672 (*A.C.*) ["If an argument in an appellate brief is supported by only an opinion or argument . . . without 'citation to any recognized legal authority,' that argument may be deemed waived for failure to present supporting substantive legal analysis"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].) In any event, she has not carried her burden to show that she suffered any prejudice from that alleged error. (Cal. Const., art. VI, § 13; *Watson, supra*, 46 Cal.2d at p. 836; *Gonzales, supra*, 5 Cal.5th at p. 195.)

D

Mother also apparently argues that the court erred by allowing Father's counsel to continue to represent Father even though the children's former counsel worked for Father's counsel during trial. As discussed above, on February 25, 2020, the court granted the request of the children's counsel to be relieved as their counsel. On January 25, 2021, in Mother's ex parte application, she noted that the children's former counsel was working for

36

Father's counsel at that time. On February 10, the court heard her application and Mother's complaint about the children's former counsel. Mother argued that the children's former counsel was "part of [Father's] legal team." Father's counsel responded, representing to the court that the children's former counsel "is not on my legal team in this case. She can't be, of course. And, yes, she did come to work for my office five months after she was released [as the children's counsel]." In the FSOD, the trial court stated that it accepted assurances by Father's counsel that adequate measures had been taken to avoid any disclosure to Father's counsel of confidential information by the children's former counsel. The court stated: "There was no evidence presented that caused the court to be concerned that [Father's counsel] had received any confidential information from minor's counsel's file."

Mother's ex parte application, filed on January 25, 2021, complaining that the children's former counsel was working for Father's counsel was, in effect, a motion to disqualify Father's counsel. At the February 10 hearing, the court implicitly denied her disqualification motion. That denial was a final order regarding the disqualification matter and was therefore immediately appealable. (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218 ["An order denying a disqualification motion is appealable either as an order refusing to grant an injunction to restrain counsel from participating in the case (Code Civ. Proc., § 904.1, subd. (a)(6)) or as a final order on a collateral matter"]; *Meehan v. Hopps* (1955) 45 Cal.2d 213, 217.) However, Mother did not timely appeal that order within the required time period under rule 8.104(a)(1) (i.e., within 180 days after

37

February 10, 2021).[7]  As discussed in Section I above, if an appealable judgment or order is not timely appealed, we lack jurisdiction to consider any challenge to it and must dismiss any appeal of it.  (Code Civ. Proc., § 906; rule 8.104(b); *Griset v. Fair Political Practices Com., supra*, 25 Cal.4th at p. 696.)  Because under the "one-shot" rule we have no jurisdiction and/or discretion to review an appealable order from which a timely appeal was not taken, Mother has forfeited any challenge to the February 10, 2021 order denying her disqualification motion by not timely appealing it and we need not, and do not, address the merits of her challenge to that order in this appeal.

E

To the extent Mother makes tangential arguments in the course of presenting her main contentions, we conclude that she has not adequately briefed those points and therefore has waived or forfeited them by not adequately citing to the record and/or presenting any substantive legal analysis.[8]  (*A.C., supra*, 13 Cal.App.5th at p. 672; *Badie, supra*,

---

[7]  On August 20, 2021, Mother filed her instant notice of appeal challenging only the FSOD, which was issued on June 24, 2021.  That notice did not cite the court's February 10 order as being appealed.  In any event, her August 20 notice of appeal was filed more than 180 days after the February 10 order and was therefore untimely to the extent it appealed that order.  (Rule 8.104(a)(1).)

[8]  Mother's tangential arguments include her assertions that the trial court was biased against her, violated her right to free speech under the First Amendment to the United States Constitution, wrongly precluded her from timely obtaining assistance from the family law facilitator's office, and improperly ordered her to not directly contact its clerk.  Furthermore, regarding her assertion of bias, such a claim against a judge can only be made by means of a petition for writ of mandate pursuant to Code of Civil Procedure section 170.6 and therefore we have no jurisdiction to consider her

67 Cal.App.4th at pp. 784-785; *Niko, supra*, 144 Cal.App.4th at p. 368; *Ewald, supra*, 13 Cal.App.5th at p. 948; *Stanley, supra*, 10 Cal.4th at p. 793; *Salas, supra*, 198 Cal.App.4th at p. 1074.) Accordingly, we need not, and do not, address their merits.

Mother also raises a number of new arguments in her reply brief that were not raised in her opening brief.[9] Because those new arguments were belatedly first raised in her reply brief and Mother has not shown good cause for her failure to raise them in her opening brief, we need not, and do not, address their merits. (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4; *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [points raised in reply brief for first time will not be considered by appellate court absent showing of

---

claim in this appeal. (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 672 [Code Civ. Proc., § 170.6 petition for writ of mandate is exclusive method to disqualify judge]; Code Civ. Proc., § 170.3, subd. (d).) Regarding her free speech assertion, we conclude that the trial court could properly conclude that many of Mother's statements and her other conduct constituted domestic violence or abuse and was therefore not protected by the First Amendment. (Cf. *In re Marriage of Evilsizor & Sweeney* (2015) 237 Cal.App.4th 1416, 1427-1428.)

[9] In her reply brief, Mother raises the following arguments that were not raised in her opening brief: (1) there is ample evidence that Father harassed and abused her and the trial court erred by excluding or disregarding such evidence; (2) there is insufficient evidence to support the court's order not requiring further counseling for the parties or the children and its finding that it was in the children's best interest for Father to decide the children's therapy, medication, and contact with other family members; (3) there is insufficient evidence to support a purported order requiring her to submit to a further mental health evaluation; (4) the court erred by not applying Dr. Miller's expert testimony regarding parental alienation to both parties instead of just to her; and (5) there is insufficient evidence to support the court's finding that she engaged in parental alienation.

good reason for failure to present them before]; *Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1542.)

## VIII

### *Award of Section 271 Sanctions Against Mother*

Mother contends the trial court erred by awarding section 271 sanctions against her in the amount of $25,000.

### A

On May 9, 2019, Father filed a request for an order awarding him section 271 sanctions against Mother for her repeated violations of the court's orders. At a June 11 hearing, the court continued the hearing on his request for sanctions. On January 27, 2020, Father filed another request for order awarding him section 271 sanctions against Mother for her repeated violations of the court's orders. In his July 15 evidentiary hearing brief, Father argued, inter alia, that the court should award section 271 sanctions against Mother for her continued violations of restraining orders and disparagement of him on the Internet. On February 19, 2021, after the evidentiary hearing was concluded, Father filed a closing argument brief on financial issues, including his request for an award of $300,000 in section 271 sanctions against Mother. In the FSOD attached to, and incorporated in, the FOAH, the court granted Father's request for section 271 sanctions against Mother, but imposed only $25,000 in sanctions against her. The court stated:

> "This case deserves sanctions more than any other case this court has dealt with or any case that this court has read dealing with sanctions. . . . [Mother] had been warned multiple times that her conduct was improper, that her conduct was and is causing unjustified attorney fees for the other party. Her conduct is an abuse of the legal system that is not fair to [Father] but most importantly not fair to the children who are victimized by her conduct. . . . The court does not believe that [Mother] has no income, she

40

lives a very affluent lifestyle for someone who claims to have no income, on one day of the hearing she was in Mexico. She claimed it was paid for by someone else, the court does not believe her. . . . Based upon [Mother's] own conduct and lack of credibility, the court does not know what [her] financial circumstances are at this time. But the testimony is she received $288,000 early in the year of litigation and has only accounted for a portion of that. There should be in excess of $100,000.00 remaining. Therefore the court is going to sanction [Mother] pursuant to . . . section 271 the sum of $25,000.00."

In the FOAH, the court awarded Father section 271 sanctions against Mother in the amount of $25,000.

### B

Section 271 authorizes a family law court to award attorney fees and costs as sanctions based "on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote the settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) In making a section 271 award, the court must consider "all evidence concerning the parties' incomes, assets, and liabilities" and "not impose a sanction . . . that imposes an unreasonable financial burden on the party against whom the sanction is imposed." (§ 271, subd. (a).) A trial court has broad discretion in deciding whether to impose sanctions under section 271. (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1177; *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226-1227.) On appeal, an appellate court applies the abuse of discretion standard in reviewing an award of section 271 sanctions and reverses only if the trial court has abused its discretion (i.e., if no judge could reasonably make the order). (*Parker*, at

41

p. 1177; *Corona*, at pp. 1225-1226; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 291.)

C

In challenging the court's award of section 271 sanctions against her, Mother makes only a conclusory argument, consisting of slightly more than one page in her opening brief, and does not present any substantive legal analysis showing that the court abused its discretion by awarding such sanctions against her. Accordingly, we conclude that Mother has waived or forfeited this contention or, at least, not carried her burden on appeal to show the court abused its discretion in awarding section 271 sanctions against her. (*A.C., supra*, 13 Cal.App.5th at p. 672; *Badie, supra*, 67 Cal.App.4th at pp. 784-785; *Niko, supra*, 144 Cal.App.4th at p. 368; *Ewald, supra*, 13 Cal.App.5th at p. 948; *Stanley, supra*, 10 Cal.4th at p. 793; *Salas, supra*, 198 Cal.App.4th at p. 1074.)

DISPOSITION

The order is affirmed.

BUCHANAN, J.

WE CONCUR:

DATO, Acting P. J.

CASTILLO, J.

42